**Clifford Lee CONRAD, Respondent,**

v.

**Cathie Lane CONRAD, Appellant.**

No. WD 59250.

Missouri Court of Appeals, Western District.

June 4, 2002.

John W. Dennis, Jr., Independence, for Respondent.

R. Gregory Gore, Independence, for Appellant.

Before ELLIS, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Cathie Lane Conrad (Wife) appeals the judgment of the Circuit Court of Jackson County dissolving her marriage to the respondent, Clifford Lee Conrad (Husband), with respect to its award of child support to Wife and its division of marital property.

Wife raises three points on appeal. In Point I, she claims that the trial court erred in entering its child support award

pursuant to its rebuttal downward of its Form 14 presumed child support amount (PCSA) of $198 as being unjust and inappropriate, based upon non-court-ordered (NCO) overnight visitation being exercised by Husband, because the record was insufficient to support rebuttal on that basis in that there was no evidence that such visitation resulted in his incurring any significant additional expenses. In Point II, she claims that the trial court erred in including in its division of marital property the $42,900 she received in proceeds in settlement of her sexual harassment lawsuit because there was no evidence from which the court could find, as required, that the proceeds still existed for distribution at the time of dissolution. In Point III, she claims that even if it was proper for the trial court to include in its distribution of marital property the sexual harassment settlement proceeds, the court still erred in including proceeds in the amount of $42,900 because in valuing the proceeds she received, the court was required, but failed, to consider the tax consequences of her receipt of the proceeds.

We affirm in part, and reverse and remand in part.

### Facts

The parties were married on January 10, 1975. Four children were born of the marriage. Two of the children, Michael Justin Conrad, born February 22, 1982, and Kelly Beth Conrad, born February 23, 1984, were unemancipated at the time of trial.

Husband filed a petition for dissolution of marriage in the Circuit Court of Jackson County on June 8, 1999. Wife filed her answer to Husband's petition and cross-petition on November 2, 1999. The case was heard on August 21, 2000, by Family Law Commissioner Sherrill Rosen, who entered her findings and recommendations and proposed judgment of dissolution on August 22, 2000. Wife filed a motion for rehearing with the circuit court, which the court denied on September 25, 2000, in its "order and judgment" adopting the findings and recommendations and proposed judgment of the Commissioner dissolving the marriage of the parties.

In its judgment of dissolution, the trial court, accepting the parenting plan submitted by Husband,[1] awarded Wife the primary physical custody of Michael and Husband the primary physical custody of Kelly, subject to visitation by the other parent every other weekend, one weeknight a week, on specified holidays and for two consecutive weeks every summer. In addition, the trial court awarded Wife $100 per month in child support and divided the parties' marital property so as to effect an equalization of property between them. To equalize the property division, the court ordered Husband to make a cash payment to Wife of $6,680.

In determining the amount of child support to award, the trial court rejected the Form 14s submitted by both Husband and Wife, and made its own Form 14 calculations. The trial court found the presumed child support amount (PCSA) to be $198 per month. The trial court then rebutted its Form 14 PCSA as being unjust and inappropriate, awarding Wife $100 per month in child support, and awarding Husband the tax exemption for Michael. The trial court's rebuttal was based on Husband's exercising non-court-ordered visitation with Michael.

With respect to the parties' marital property, the trial court heard testimony concerning $65,000 which Wife had received in settlement of a sexual harass-

1. The record reflects that Wife never submitted a parenting plan.

ment lawsuit that she had filed against her employer. After attorney's fees and expenses were deducted from the settlement proceeds, the trial court found that Wife "netted" or received $42,900 in proceeds. At trial, Wife testified that she had received the proceeds shortly before the parties separated in March of 1999, and that she used the money to set up a new home after leaving the marital residence. Specifically, she said that she used the money to pay rent, a pet deposit, deposits on utilities, an $8,000 credit card debt, laundry and gas expenses, and debt on an automobile.

This appeal follows.

## I.

■ In Point I, Wife claims that the trial court erred in entering its child support award pursuant to its rebuttal downward of its Form 14 PCSA of $198 as being unjust and inappropriate, based upon the NCO overnight visitation by Michael with Husband in order to maintain Michael's residency in the Truman School District because the record was insufficient to support rebuttal on that basis. Specifically, Wife claims that to rebut on that basis, Husband was required, but failed, to present evidence that his NCO visitation with Michael resulted in his incurring significant additional expenses. Her claim is well taken.

■ In determining an award of child support in any proceeding, § 452.340.8[2] and Rule 88.01[3] require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996), which was approved by the Missouri Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997).

*Ricklefs v. Ricklefs*, 39 S.W.3d 865, 869–70 (Mo.App.2001). In the first step, the trial court must determine and find for the record the PCSA in accordance with Form 14. *Ricklefs*, 39 S.W.3d at 870. This required determination and finding can be done by the trial court's either accepting for the record a Form 14 calculation of one of the parties, or in the event the court "rejects" their Form 14 calculations as being incorrect, by doing its own Form 14 calculation. *Woolridge*, 915 S.W.2d at 381–82. The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record or by articulating on the record how it calculated its Form 14 amount. *Id.* at 382. In the second step, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate. *Ricklefs*, 39 S.W.3d at 870. Our review then of an award of child support is essentially one of the trial court's application of the two-step *Woolridge* procedure, applying the standard enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Hence, in reviewing an award of child support, we review the award, in light of the trial court's application of the *Woolridge* procedure, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Ricklefs*, 39 S.W.3d at 869; *Woolridge*, 915 S.W.2d at 375. After reviewing and determining that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation. *Nelson v. Nelson*, 25 S.W.3d 511, 520 (Mo.

---

**2.** All statutory references are to RSMo 2000, unless otherwise indicated.

**3.** All rule references are to the Missouri Rules of Civil Procedure (2001), unless otherwise indicated.

App.2000). In this point, the issue is a *Murphy v. Carron* question, whether the trial court's rebuttal downward of the PCSA, on the basis of non-court-ordered overnight visitation, is supported by the evidence.

Pursuant to Husband's parenting plan, which was adopted by the trial court in its award of child custody, the parties were awarded joint legal and physical custody of Kelly and Michael, with Husband being designated the primary physical custodian of Kelly and Wife being designated the primary physical custodian of Michael. Although Wife was designated as Michael's primary physical custodian, the court designated Husband's residence as Michael's for educational purposes. In that regard, the trial court found in its judgment:

> While [Husband's] parenting plan suggests specific visitation, the evidence is that the children will move back and forth between the parties['] homes in accordance with their own schedules, however, the parties have been able to work this out for the benefit of their children.

> There is also evidence that Michael attends school at Truman High School, which is in the district where [Husband] resides. The testimony is that in order to maintain residency for school purposes, the child stays overnight with [Husband] four nights a week during the school year. The Court finds it to be in Michael's best interests that [Husband's] residence be designated as the child's for educational purposes.

In light of this finding, one would have expected that in awarding visitation to the parties, the trial court would have included the four nights of overnight visitation that the court found that Husband was actually exercising with Michael. However, in ordering specific visitation to each parent, the trial court for some unexplained reason did not include this visitation.

As required in a split custody case like ours, *see* Civil Procedure Form No. 14, Comments for Use (C), both parties submitted two Form 14s, one with Wife as the custodian of Michael and one with Husband as the custodian of Kelly. The trial court rejected the Form 14s submitted by the parties and did its own calculations, reflecting a PCSA to Wife from Husband of $442 and a PCSA to Husband from Wife of $244. Subtracting the lesser amount owed to Husband from the greater amount owed to Wife resulted in a PCSA to Wife of $198. The court then rebutted this amount downward, awarding Wife monthly child support of $100 and awarding Husband the tax exemption for Michael. In rebutting its PCSA as being unjust and inappropriate, the trial court was required to make a record as to the basis for its rebuttal. *Neal*, 941 S.W.2d at 504. In that regard, the trial court found in its judgment:

> The Court finds the presumed correct child support amount for Respondent to pay to Petitioner for Kelly is $244 per month, and the presumed correct child support amount for Petitioner to pay Respondent for Michael is $442 per month, and pursuant to Section 452.340.8, Rule 88.01, and Form 14, the presumed correct child support amount is $198 per month, and after consideration of all relevant factors pursuant to section 452.340.8, and Rule 88.01, is rebutted as being unjust or inappropriate in that during the school year, Michael spends the week with Petitioner to attend school, and Petitioner has additional expenses for Michael because of that; and after consideration of all relevant factors pursuant to Section 452.340.1, and Rule 88.01, the reasonable and necessary amount of child support is $100 per month. The Court also finds it rea-

sonable, that although Respondent will be designated as Michael's primary custodial parent, the child will be residing with the Petitioner during the school year, and therefore it is reasonable that Petitioner be allowed to claim Michael for income tax purposes.

As discussed, *supra,* Wife claims that this basis found by the trial court for its rebuttal of the PCSA was not supported by the record in that Husband was required to present evidence that his NCO visitation with Michael resulted in his incurring significant additional expenses, but there is no evidence in the record of such. In contending that the record supports the trial court's rebuttal of its PCSA on the basis given by the trial court, despite any evidence that he would incur any additional expenses as a result thereof, Husband essentially asks us to adopt, for purposes of rebutting the PCSA based on *NCO overnight visitation,* the same rationale on which the adjustment (OVA) found at Line 11 of the Form 14 PCSA calculation for *court-ordered overnight visitation* is predicated. We reject this proposition for the reasons discussed, *infra.*

Line 11 of Form 14 sets out the OVA, which is a percentage adjustment to the "basic child support amount," found at Line 5 of Form 14, "for a portion of the amounts expended during periods of overnight visitation or custody." The OVA is limited to "court-ordered (CO)" visitation, the Line 11 DIRECTION providing, in pertinent part: "This adjustment is based on the number of periods of overnight visitation or custody per year *awarded* to and exercised by the parent obligated to pay support *under any order or judgment.*" (Emphasis added.) Based on the "number of overnight periods" ordered, the Line 11 DIRECTION sets out a table for calculating the OVA:

| % of Year | Number of Overnight Periods | Adjustment |
| --- | --- | --- |
| | Less than 36 | 0% |
| 10%–20% | 36–72 | 6% |
| 20%–25% | 73–91 | 9% |
| 25%–30% | 92–109 | 10% |

The Line 11 DIRECTION further provides for an OVA greater than 10% if the parent obligated to pay support is awarded overnight periods exceeding 109 periods per year.

To receive a Line 11 OVA for CO overnight visitation, the parent obligated to pay support does not have to prove actual expenses, but receives the applicable adjustment based on the number of overnight periods awarded. Line 11 DIRECTION. This is so in that the OVA table presumes that the obligor will incur certain expenses. This presumption is predicated on Assumption 12 of the Form 14 Assumptions, which provides:

(12) With respect to the adjustment for a portion of amounts expended by the parent paying support during periods of overnight visitation and custody:

The basic child support amount can be divided into three categories of expenditures:

*Variable expenditures* are child-related expenditures that vary directly with the amount of time a child spends with each parent, such as food. It has been assumed that variable expenditures represent 38% of the basic child support amount.

*Duplicated fixed expenditures* are child-related expenditures that do not vary with the amount of time a child spends with each parent but are incurred by both parents, such as housing. It has been assumed that duplicated fixed expenditures represent 30% of the basic child support amount.

*Non-duplicated fixed expenditures* are child-related expenditures that do

not vary with the amount of time a child spends with each parent and are usually incurred by the parent in whose household a child resides the greater amount of the time, such as clothing. It has been assumed that non-duplicated fixed expenditures represent 32% of the basic child support amount.

The amount of any adjustment to which the parent obligated to pay support is entitled for a portion of the amounts expended on the children who are the subject of this proceeding during periods of overnight visitation or custody assumes that the parent obligated to pay support will incur:

(1) no significant expenditures for the children if that parent exercises visitation or custody for less than 36 periods per year;

(2) variable expenditures for the children if that parent exercises visitation or custody for 36 or more periods per year;

(3) duplicated fixed expenditures for the children if that parent exercises visitation or custody for 110 or more overnight periods per year; and

(4) no significant non-duplicated fixed expenditures for the children.

Thus, for purposes of calculating the PCSA, it is assumed that the parent obligated to pay support will begin to incur "variable expenditures" for overnight periods awarded of 36 or more and "duplicated fixed expenditures" for overnight periods awarded of 110 or more. It is further assumed that the obligor will not incur any significant "non-duplicated fixed expenditures" for periods of CO overnight visitation. Applying these assumptions to the OVA table, it becomes clear that the 6%, 9% and 10% adjustments provided for in the table pertain to variable expenditures

only; that duplicated fixed expenditures are not considered in the table percentages and would only come into play for purposes of determining the OVA to be allowed where the periods awarded exceed 109; and that non-duplicated fixed expenditures would not come into play at all in determining the OVA.[4]

**Comment B** of **Line 11** does provide for downward rebuttal of the OVA, which is part of the Form 14 calculation of the PCSA and should not be confused with rebuttal of the PCSA that occurs only *after* the trial court's determination of the PCSA, step 1 of the *Woolridge* procedure, is complete. In other words, with respect to the *Woolridge* procedure, CO overnight visitation is a rejection or calculation factor under Line 11 (step 1), while NCO overnight visitation is a rebuttal factor (step 2). *Woolridge*, 915 S.W.2d at 379. As to rebutting the OVA, **Comment B** of **Line 11** reads:

In any proceeding to establish a child support order or to modify the support payable under an existing order, the adjustment on this line 11 may be rebutted if the parent obligated to pay support:

(1) without fault of the parent entitled to receive support, does not exercise the periods of overnight visitation or custody with the children who are the subject of this proceeding awarded under any order or judgment,

(2) does not incur significant duplicated fixed expenditures as a result of periods of overnight visitation or custody, or

(3) without fault of the parent entitled to receive support, exercises the periods of overnight visitation or custody awarded under any order or

4. For a detailed overview of these expenditures and of the computation methodology for Line 11, see Hon. Joseph A. Goeke, III, *The*

*Missouri Custody Adjustment Methodology: Where Did the Numbers Come From?* 54 J. Mo. Bar 305 (1998).

judgment with some but not all the children who are the subject of this proceeding.[5]

As to these three bases for rebutting the OVA set out in **Comment B**, we would note the apparent conflict between limiting the second basis of rebuttal to "duplicated fixed expenditures" and **Assumption 12**, discussed, *supra*, which makes it clear that "variable expenditures" are presumed for overnight periods of 36 or more. Given **Assumption 12**, it makes no sense to limit rebuttal of the OVA to duplicated fixed expenditures when the OVA is clearly predicated on the assumption that before the parent obligated to pay support incurs duplicated fixed expenditures, he or she necessarily is presumed to incur variable expenditures. The answer to this quandary may lie in the fact that the language of **Comment B** is couched in terms of "may." The use of "may" in this context implies alternate possibilities, *State ex rel. Nixon v. Boone,* 927 S.W.2d 892, 897 (Mo.App. 1996), and, thus, we interpret it as allowing rebuttal of the OVA on bases others than those specified in **Comment B**, including a showing that the obligated parent does not incur significant variable expenditures as a result of the overnight periods awarded.

As noted, *supra*, with respect to the *Woolridge* procedure, CO overnight visitation is a rejection or calculation factor under Line 11, while NCO overnight visitation is a rebuttal factor. *Woolridge,* 915 S.W.2d at 379. Hence, in determining its award of child support, the trial court here could only consider the periods of Husband's NCO overnight visitation with Michael in the context of rebutting its PCSA, which it did. The issue, however, in this point, as framed by the parties, is not whether such visitation was a proper sub-ject for rebuttal of the PCSA, determined by the trial court, but whether the proof was sufficient to permit the court's downward rebuttal of the PCSA. This issue necessarily requires us to determine which party had the burden of proof as to the rebuttal of the PCSA on the basis of NCO overnight visitation and whether that burden was satisfied. Specifically, the issue is whether Husband, to rebut the PCSA found by the trial court, had the burden to prove that his NCO overnight visitation with Michael resulted in Husband's incurring additional expenses or whether he could rely on the same expense assumption on which the rebuttal of the Line 11 OVA is predicated.

As discussed, *supra*, the first step of the mandatory *Woolridge* procedure requires the trial court to determine the PCSA. *Woolridge,* 915 S.W.2d at 379. The amount so calculated is presumed to be the correct amount for the trial court to award as child support and is the amount to be awarded, unless in the second step of the procedure the court finds that the PCSA is unjust and inappropriate requiring rebuttal. Rule 88.01; § 452.340.9. The burden of proof in the case of rebuttal of the PCSA is on the child support obligor. *Crews v. Crews,* 949 S.W.2d 659, 669 (Mo. App.1997). And, in rebutting the PCSA, unlike rebutting the Line 11 OVA, which is predicated on the exercise of periods of CO overnight custody or visitation, there is no express assumption that the obligor incurs added expenditures by the mere virtue of exercising periods of NCO overnight custody or visitation. Thus, unlike rebutting the Line 11 OVA, where the burden is on the child support obligee to rebut the assumed expenses of the obligor for exercising CO overnight periods of cus-

---

**5.** We would note that the third basis for rebutting the OVA appears to be nothing more than an extension of the first basis.

tody or visitation, in the case of rebutting the PCSA on the basis of NCO overnight periods of custody or visitation, the burden should and would logically fall on the obligor to show that as a result of exercising such custody and visitation, he or she would incur additional expenses, rendering the award of the PCSA unjust or inappropriate. Logically, this is so in that for us to rule the other way would effectively shift the burden of proof for rebutting the PCSA, on the basis of the exercise of NCO overnight visitation, to the child support obligee.

Given the foregoing discussion, to rebut downward the PCSA found by the trial court as being unjust or inappropriate on the basis of his NCO overnight visitation with Michael, Husband had the burden to demonstrate that such visitation resulted in his incurring significant additional expenses. In that regard, it is beyond dispute that Husband offered no such evidence. Thus, there was insufficient evidence to support the trial court's downward rebuttal of its PCSA from $198 to $100 on the basis of NCO overnight visitation.

As noted, *supra*, the trial court, in rebutting the PCSA, not only reduced Husband's monthly child support payment from $198 to $100, but also awarded him the tax exemption for Michael on the same basis as it lowered his payment. In that regard, the court found: "Although Respondent will be designated as Michael's primary custodial parent, the child will be residing with the Petitioner during the school year, and therefore it is reasonable that Petitioner be allowed to claim Michael for income tax purposes." Wife contends, just as in the case of the trial court's lowering Husband's monthly child support payment from $198 to $100, that without a showing that Husband would incur additional expenses for exercising NCO visita-

tion with Michael, he was not entitled to the award of the tax exemption for Michael. We agree.

As Wife points out in her brief, **Assumption 7** of the **Form 14 Assumptions** states: "The schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the children entitled to support." We read this to mean that the calculation of the PCSA is based, in part, on this assumption. Consequently, if the trial court switches the presumed award of the tax exemption from the child support obligee to the obligor, it is, in effect, rebutting the PCSA. As such, to award a tax exemption to a child support obligor, the trial court must comply with the second or rebuttal step of the *Woolridge* procedure. This, of course, would be true even if the court were not deviating from the dollar amount of the monthly child support payment, which is calculated as the PCSA. Hence, inasmuch as we have already determined that the trial court erred in rebutting downward Husband's monthly child support payment on the basis of his exercising NCO overnight visitation with Michael for failure to show that Husband incurred additional expenses as a result, the court necessarily erred in awarding him the tax exemption for Michael on that same basis.

In summary of this point, because Husband failed to present any evidence as to any additional expenses he would incur as a result of his exercising the four nights of NCO overnight visitation with Michael, the trial court erred in rebutting the PCSA on that basis and awarding Wife $100 in monthly child support and awarding Husband the tax exemption for Michael. As such, we are required to reverse that portion of the trial court's judgment awarding child support and remand for the court to enter its amended judgment awarding

Wife child support of $198 per month and the tax exemption for Michael, retroactive to the date child support was ordered to commence in the court's judgment.

## II.

In Point II, Wife claims that the trial court erred in including in its division of marital property the $42,900 she received from the settlement of her sexual harassment lawsuit because there was no evidence from which the court could find, as required, that the proceeds still existed for distribution at the time of dissolution. Specifically, she claims that the record reflects that she was neither secreting nor had squandered the settlement proceeds, but had expended them, prior to trial, on her "debt and living expenses," such that as to those proceeds, there was nothing left for the trial court to value or divide as part of the marital estate. In claiming as she does, Wife points out that the judgment of dissolution reflects an intent by the trial court to equalize the division of marital property and debts between the parties. In that regard, the court ordered Husband to pay Wife $6,680 "as an equalization in the property and debt division." Wife contends from this that if the trial court had not erroneously awarded her as marital property $42,900 in sexual harassment settlement proceeds, the equalization payment from Husband would have been significantly higher.

A reviewing court must defer to the trial court's marital property division unless it is improper under the standard of *Murphy v. Carron*, 536 S.W.2d at 32, or is an abuse of discretion. *Ray v. Ray*, 877 S.W.2d 648, 651 (Mo.App.1994). The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption. *Id.* "The trial court has broad discretion in the division of marital proper-

ty and will only be disturbed on appeal if the distribution of marital property is so 'heavily and unduly weighted in favor of one party as to amount to an abuse of discretion.'" *Gendron v. Gendron*, 996 S.W.2d 668, 670 (Mo.App.1999) (citation omitted).

As Wife contends, as a general rule, the appropriate date for valuing marital property in a dissolution proceeding is the date of trial. *Wright v. Wright*, 1 S.W.3d 52, 62 (Mo.App.1999). Thus, under this rule, if a marital asset does not exist at the time of trial, the trial court cannot value and include that asset in its division of marital property. *Id.* In that regard, Wife claims on appeal, as she did at trial, that the sexual harassment settlement proceeds she admittedly received after attorney's fees and expenses, in the amount of $42,900, did not exist at the time of trial such that it was error for the trial court to include them in its division of marital property. In claiming as she does, wife does admit, however, that there is an exception to the general rule that the trial court cannot value and divide marital assets that apparently no longer exist, which exception provides that where a spouse is found to be secreting or to have squandered marital assets in anticipation of the marriage being dissolved, the court may hold that spouse liable for the value of those assets. *Schneider v. Schneider*, 824 S.W.2d 942, 947 (Mo.App.1992). Wife, however, contends that there is no evidence that she was secreting or had squandered the sexual harassment settlement proceeds and that the record would only support the conclusion that she used the "proceeds for payment of debt and living expenses" during her separation from Husband, such that it was error for the trial court to include the proceeds in its division of marital property. As Wife contends, if, in fact, she expended the settle-

ment proceeds on her legitimate and reasonable needs during her separation from Husband prior to the dissolution proceeding, the trial court erred in holding her liable for them by awarding them to her as part of her 50% share of the marital estate. Such expenditures have been held to be legitimate expenditures of marital assets, as would be the case if the parties had not separated. *Finnical v. Finnical,* 992 S.W.2d 337, 343 (Mo.App.1999). Thus, as Wife further contends, the trial court could only have charged her with the proceeds if the record would support the fact that she was secreting or had squandered the settlement proceeds. *Id.*

In reviewing the cases dealing with the secreting and squandering of marital assets, it appears that there is a conflict between what our appellate courts have expressly stated as to which party has the burden of proof on those issues and the actual standard that is applied in deciding those issues on appeal. In that regard, although professing that the burden of proof is on the spouse claiming that a marital asset is being secreted or had been squandered, our reading of the cases reveals that our appellate courts have in some respects shifted the burden to the other spouse to account for what had happened to the claimed "missing" asset. *See Schneider,* 824 S.W.2d at 947; *Hogrebe v. Hogrebe,* 727 S.W.2d 193, 197 (Mo.App. 1987); *Bland v. Bland,* 652 S.W.2d 690, 692 (Mo.App.1983). As to what has spawned this apparent conflict as to the burden of proof with respect to the secreting and squandering of marital assets, it would appear that our appellate courts have implicitly recognized the logic of shifting the burden of going forward with the evidence to the other spouse once the issue of secreting or squandering a marital asset is raised.

▇ Logically, a trial court in a dissolution proceeding cannot consider an asset for distribution as marital property, unless and until there is evidence that there is a marital asset subject to distribution. Thus, a spouse, claiming that a marital asset is being secreted or was squandered by the other spouse in anticipation of a dissolution proceeding, must introduce evidence demonstrating that there existed at some point a marital asset, which is being secreted or was squandered. While the burden of proof would remain with the spouse claiming that the other spouse was secreting or had squandered the marital asset in question, the burden of going forward with the evidence would then shift to the other spouse to "account" for the claimed secreted or squandered asset by presenting evidence as to its whereabouts or disposition. *See Bland,* 652 S.W.2d at 692. This is a logical procedural step in resolving the issue of the secreting or squandering of a marital asset, in that the spouse claiming that an asset has been secreted or squandered by the other spouse is usually not in a position to know exactly what the other spouse did with the asset, especially in the case of the secreting of an asset. We believe that this approach is in reality the approach that has been applied by our appellate courts in the past, but without express recognition of that fact.

Applying the procedural approach enunciated herein, Husband, in order to succeed on a claim at trial that the settlement proceeds received by Wife were marital property subject to division by the trial court, had the burden to introduce evidence that Wife received the settlement proceeds, which were marital property subject to division by the trial court, and that she was either secreting them or had squandered them. Thereafter, the burden would have shifted to Wife to account for the proceeds. Husband then would have

been in a position to respond to Wife's accounting evidence. It then would have been up to the trial court to resolve any conflicts in the evidence and determine whether Husband had carried his burden of proof with respect to a claim that Wife was secreting or had squandered the proceeds. In doing so, the court would have to resolve any credibility issues. *Schneider,* 824 S.W.2d at 947.

There is no dispute that Wife received the settlement proceeds in question and that they were marital property. In that regard, the parties stipulated and agreed that she "netted" $42,900 of the $65,000 in settlement proceeds. Although Husband included the $42,900 in proceeds in his statement of marital property, he never claimed at trial that Wife was secreting or had squandered them. As to what Wife did with the proceeds from the time of their receipt until the time of trial, she testified at trial under questioning by her trial counsel:

Q. And what did you use that settlement money for?

A. I paid for my first and last month's rent and pet deposit, because I had animals. Deposits on utilities, the ones that they required me to provide. Laundry. Because I had no washer and dryer and I had quite a bit of laundry to do. Of course, my gas expense—normal expenses I always had before, to get back and forth to work and—

Q. Did you—Did you pay an $8,000 marital credit card debt with part of that settlement money?

A. When I bought the house it was required that I pay off a credit card and the Jeep payment in order to buy the house.

Q. Okay. But you had to use your—part of your settlement money to do that; is that correct?

A. Yes. That's how I paid for it. Yes.

Q. All right. So basically you've used your settlement money shortly after the separation to set you up a place to live because you left the marital home; is that correct?

A. That is correct.

Husband offered nothing in the way of evidence to counter Wife's claim that she had spent the proceeds to meet her reasonable and necessary living expenses during separation. His only testimony on the subject was his response to a question by his attorney on direct as to any discussions he had had with Wife concerning the proceeds. In that regard, Husband testified:

I told she should [sic]. And she said to me that she thought that—that was her retirement. That's what she had— That's all she had and that's what she was going to do with it. But apparently she didn't do that with it.

There is nothing in the record indicating that Husband was contending at trial that Wife was secreting or had squandered the settlement proceeds. Moreover, he offered no evidence to that effect or any evidence to refute Wife's claimed expenditure of the proceeds. In addition, his trial counsel did not argue the issue in his closing argument. In fact, the terms "secreting" and "squandered" do not appear at any time in the transcript of the dissolution proceeding. In addition, there is nothing in the record that clearly indicates that the court was crediting Wife's marital share with the settlement proceeds on the basis that the court believed she was secreting or had squandered the proceeds. Rather, the court simply found in its judgment that Wife "received the funds and spent them on her own behalf."

The facts of our case, as to the issue of Wife's secreting or squandering marital assets, are very similar to those in *Witt v. Witt,* 930 S.W.2d 500 (Mo.App.1996), which

involved $900 in traveler's checks that had been expended by the wife at a "retreat" prior to the dissolution proceeding and were charged to the wife's share of the marital property. In reversing the inclusion of the traveler's checks as marital property, this court opined:

> [Husband] does not contend that his wife squandered or misused the traveler's checks in anticipation of divorce. Nor does he dispute that he knew his wife used the traveler's checks in the manner she asserted. The court made no finding that she squandered or misused the funds or that it did not believe her explanation. In the absence of evidence or a finding by the circuit court that [wife] secreted or squandered the traveler's checks in anticipation of divorce, we conclude that the circuit court improperly awarded that property to her.

*Id.* at 505. Our case is distinguishable, however, from *Witt* in that there the wife clearly explained how she expended the $900 in traveler's checks, while in our case, Wife's accounting was somewhat vague as to her expenditure of the entire amount of the proceeds, which were much more substantial than in *Witt. See Schneider,* 824 S.W.2d at 947 (holding that the trial court is free to disbelieve a witness' testimony or "vague accounting" that they used expended money for living expenses). Given the confusion as to the law with respect to the burden of proof as to the secreting and squandering of marital assets, which we discuss, *supra,* and what we perceive to be a lack of a record on the issue of the settlement proceeds on which to allow any meaningful appellate review, we believe rather than reversing outright the trial court's distribution of marital property with respect to the settlement proceeds, as was done in *Witt,* the better course here is to reverse and remand the issue for the trial court to fully develop the record and

then to rule on whether all or any part of the $42,900 in settlement proceeds were secreted or had been squandered by Wife, necessitating their being charged to her in the court's distribution of marital assets.

## III.

In Point III, Wife claims that even if it was proper for the trial court to include in its distribution of marital property the sexual harassment settlement proceeds, the court still erred in including proceeds in the amount of $42,900 because in valuing the proceeds she received, the court was required, but failed, to consider the tax consequences of her receipt of the proceeds. Specifically, she claims that she had received from the Internal Revenue Service a tax statement, which reflected a tax liability of $15,605 as a result of her receiving the settlement proceeds, and that the payment of this tax liability would reduce the actual amount of the proceeds that she received. Although this issue may ultimately be rendered moot should the trial court find, on remand of Point II, that the settlement proceeds were not secreted or squandered by Wife, precluding their inclusion in the court's distribution of marital assets, because it is likely to arise again if the trial court finds otherwise on remand, we choose to address the issue in this appeal.

As Wife contends, in valuing the marital estate, the trial court is to take into consideration any tax consequences that would reduce the effective value of a marital asset. *Homfeld v. Homfeld,* 954 S.W.2d 617, 621 (Mo.App.1997). However, Husband argues that it would have been inappropriate for the trial court to consider any tax consequences to Wife as a result of her receipt of the settlement proceeds because Wife did not present sufficient evidence to establish that she would be subject to any such tax consequences, citing

**318**

*Baldwin v. Baldwin*, 905 S.W.2d 521, 524 (Mo.App.1995). We need not decide if there was sufficient evidence for the trial court to consider the tax consequences to Wife of the receipt of the settlement proceeds, inasmuch as we are already reversing and remanding on the issue of the settlement proceeds. Our only purpose in addressing the issue raised here is to insure that the trial court is clear on how to address it if it comes back up on remand.

The trial court addressed the issue presented in this point in its findings in its judgment, stating:

> [Wife] argues that the value of the [settlement] proceeds should be discounted by the amount of taxes now owed. [Wife] has not contested the tax assessment on the settlement, but as it was just recently assessed, would have that option. [Husband], however, did not share in the benefit of the settlement; [Wife] received the funds and spent them on her own behalf. As [Husband] has not shared in the benefits, he should not share in the tax consequences. The Court will assess the full value of the proceeds in the amount of $42,900 to the [Wife].

From this, it is clear to us that the trial court was mistaken as to the full implications of the tax consequences of the settlement proceeds. Obviously, a tax obligation triggered by receipt of the settlement proceeds would affect the "net" amount that Wife would ultimately realize in proceeds just as much as attorney's fees and expenses associated with prosecuting the lawsuit, which the trial court recognized were properly deducted in determining the amount of the proceeds chargeable to Wife as marital property. Hence, on remand, should the trial court determine that the settlement proceeds, in whole or part, should be included in its division of marital property, it should consider in valuing the proceeds any tax consequences incurred by Wife resulting from their receipt.

### Conclusion

The judgment of the trial court dissolving the marriage of the parties is affirmed in all respects except its awards of child support and marital property, which are reversed and the case remanded to the circuit court with directions to enter a child support order awarding Wife $198 per month and the tax exemption for Michael and for further proceedings with respect to its award of marital property, all in accordance with this opinion.

ELLIS, P.J., and HOWARD, J., concur.