**Julie Ann (Lewey) BEARCE, Respondent,**

v.

**Scot Michael LEWEY, Appellant.**

**No. WD 64712.**

Missouri Court of Appeals, Western District.

Jan. 31, 2006.

---

Anita I. Rodarte, Kansas City, MO, Arguing on behalf of Appellant.

Michaela C. Shelton–Sinkhorn, Overland Park, KS, Arguing on behalf of Respondent.

Before ROBERT G. ULRICH, P.J., PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

This is an appeal from a modification of child support. Scot Lewey (Father) appeals the trial court's order increasing his child support payment to Julie Ann Bearce (Mother) for the two children that remain in Mother's custody. Father's primary contention is that the evidence was insufficient to support the award. We reverse and remand.

## Statement of Facts

The parties were divorced in Colorado in 1997. The Colorado judgment established custody, visitation, and child support for the couple's three children, Joshua, Aaron, and Rachel. The children, who were ages twelve, ten, and seven at the time, were placed in the joint custody of Mother and Father. Mother was designated the primary residential custodian. Father was ordered to pay $1,696 per month in child support. Father's monthly salary at the time was approximately $10,000. Father also was ordered to pay Mother monthly maintenance of $2,500.

Mother and the three children later relocated to Missouri. The Colorado judgment was registered in Platte County, Missouri, in 2001. A year later, in May 2002, a judgment of modification was entered in the Platte County Circuit Court. The judgment provided for joint legal and joint physical custody. The children were to continue to reside with Mother and have specific periods of parenting time with Father. Upon agreement of the parties, the child support was reduced to $1,500 per month in exchange for Father's agreement to pay all the travel expenses associated with the exercise of his parenting time. The judgment required the parties to pay

a "proportionate share based on their respective incomes" for each child's college expenses. It also included a provision that permitted the parents to "pay their proportionate share of the child's college expenses or child support ... either directly to the child or to the college/university." Father's monthly income at that time was $20,000.

In July 2003, Joshua, the oldest child, moved to Colorado to attend college. On the day Joshua moved into his college dormitory, Father handed Mother a note stating that he would be reducing the amount of child support to $1,000 per month and applying the other $500 to Joshua's college expenses. From that point forward, Father paid Mother $1,000 monthly in child support and either paid the additional $500 directly to Joshua or applied it to his college costs.

That same month, Father filed a motion to modify payment of child support requesting an order permitting him to pay $500 per month directly to Joshua, thereby reducing the amount he pays Mother to $1,000 per month. Mother filed a cross-petition for modification, alleging that a substantial and continuing change of circumstances made the existing amount of child support unreasonable. Those changed circumstances were the children's need for an increase in support and Father's increase in income. Father filed an amended motion seeking to change Joshua's custody from Mother to Father and to modify the child support amount in accordance with the Form 14 guidelines.

A bench trial was held in September 2004. At the time of trial, Joshua was nineteen years old, Aaron was seventeen, and Rachel, fourteen. The parties stipulated at the outset that custody of Joshua would be transferred to Father, that the child support provisions with regard to Joshua would terminate, and that Father would pay all of Joshua's college expenses.

Both Mother and Father testified and introduced income and expense statements. Father's monthly income as a physician is $60,000 per month. Father supports two children from his second marriage as well as the children of this marriage. He reimburses Mother $124 per month for the children's health insurance premium. Father established that he exercises overnight parenting time at least thirty-six nights per year. He offered evidence to show that he spent $11,000 in 2003 for visitation travel expenses. He also presented evidence that the yearly cost of Joshua's college is $27,000, including room and board, and that he had paid $22,000 for Joshua's first year there.

Mother's monthly income from her employment as a registered nurse is $4,247. In addition, she receives $2,500 monthly maintenance from Father which is to terminate in early 2007. Mother's statement of income and expenses showed total expenses for herself and the two children of $6,150. Although Mother has remarried, she stated that the expenses were only for her and the two children. Mother testified about some of the costs for the children's extracurricular activities. She stated that the children's expenses were "close to $7,000 per month."

Both parties submitted Form 14s to the court. Mother's Form 14 for the two children still in her custody showed a presumed correct child support amount (PCSA) of $2,344. Father calculated the PCSA for the two children to be $2,052, which included a deduction for Father's overnight custody. Mother requested that the court deviate from the PCSA and award child support in the amount of $7,198 per month. Mother's attorney informed the court that this figure was partly based on an extrapolation from the

Form 14 income percentages, because the parties' combined incomes exceeded the $20,000 guideline maximums.

Both parties also submitted Form 14s that calculated a support amount for Joshua. The court stated during trial, though, that Joshua should not be included in the Form 14 calculation based on the parties' stipulations. The court noted that Father had agreed to pay all of Joshua's college expenses and indicated that the judgment would include an order to that effect. In discussion with counsel, the court stated that Father's expenses for Joshua would be taken into consideration in arriving at the child support amount.

Neither party requested findings of fact and conclusions of law. At the close of trial, the court took the case under advisement. On September 14, 2004, the court entered its judgment modifying child support. The court ordered Father's address to be designated as the residence of Joshua for mailing and educational purposes. The court adopted Father's parenting plan for Joshua, but ordered no child support for him. The judgment included no provision specifically ordering Father to pay for Joshua's college education; nor did the parenting plan include such a provision. The court found that Father had been paying $1,000 per month to Mother in child support. According to the court, the presumed correct child support amount for the two children still in Mother's custody is $2,344, as found on Mother's Form 14. The court noted that the parties' joint income exceeds the maximum amount found on the Form 14 schedule. The court specifically found that "[a]fter considering all relevant factors, the presumed child support amount of $2,344 is rebutted as unjust and inappropriate." The court determined that the appropriate amount of child support is $4,000 per month and ordered it paid retroactive to October 1,

2003. The judgment did not include a provision dealing with the college education expenses for the two children still in Mother's custody; nor did it provide that all prior orders not specifically modified shall remain in full force and effect.

Father appeals.

### Standard of Review

■ Our review of a child support modification order is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), under which we must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ricklefs v. Ricklefs*, 111 S.W.3d 541, 543 (Mo.App.2003). A judgment will be set aside on the basis that it is against the weight of the evidence only with caution and only when there is a firm belief that the trial court's judgment is wrong. *Haden v. Riou*, 37 S.W.3d 854, 860 (Mo.App. 2001). We defer to the trial court's determinations of credibility and view the evidence in the light most favorable to the judgment. *Searcy v. Searcy*, 85 S.W.3d 95, 99 (Mo.App.2002).

■ An award of child support is within the sound discretion of the trial court. *Haden*, 37 S.W.3d at 860. An appellate court will interfere only if the trial court abused its discretion by ordering an amount that is against the logic of the circumstances or is arbitrary or unreasonable. *In re Marriage of Gerhard*, 985 S.W.2d 927, 930 (Mo.App.1999). We will not disturb a child support award "unless the evidence is 'palpably insufficient' to support it." *Id.* (*quoting Elliott v. Elliott*, 920 S.W.2d 570, 574 (Mo.App.1996)).

### Point II: Finding of "Unjust and Inappropriate"

■ Father raises three points on appeal. We address his second point first, in

which Father argues that the trial court erred and abused its discretion in rebutting the presumed correct child support amount (PCSA) as "unjust and inappropriate" and awarding $4,000 per month in child support because the evidence was insufficient to support those findings. He contends also that the court erred in basing the award on an extrapolation formula intended to provide an accumulation of capital rather than provide for the specific needs of the children.

■ Child support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms of the original award unreasonable. § 452.370.1;[1] *Lokeman v. Flattery*, 146 S.W.3d 422, 426 (Mo.App.2004). Where application of the child support guidelines results in a change from the existing amount by twenty percent or more, a *prima facie* showing of such a change is satisfied. § 452.370.1. Here, Father acknowledges that the parties' existing incomes result in a twenty-percent change, constituting a *prima facie* showing of a change of circumstances. Once the party seeking modification has met this burden, the court then determines the child support amount "in conformity with criteria set forth in section 452.340 and applicable supreme court rules." § 452.370.2.

In determining an award of child support in any proceeding, section 452.340 and Supreme Court Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372 (Mo.App.1996), and approved by the Missouri Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997). *Conrad v. Conrad*, 76 S.W.3d 305, 308 (Mo.App.2002). In step one, the trial court determines and finds for the record

the presumed child support amount pursuant to Civil Procedure Form No. 14. *Id.* Here, the court accepted Mother's Form 14 calculation and concluded that the presumed correct child support amount is $2,344 per month.

■ Step two of the *Woolridge* procedure permits the trial court to "rebut" the Form 14 amount as "unjust or inappropriate" after considering all relevant factors. *Conrad*, 76 S.W.3d at 308; § 452.340.9; Rule 88.01(b). Step two permits the trial court to exercise its broad and sound discretion in the final determination of a child support award. *Woolridge*, 915 S.W.2d at 379. In order to rebut the presumed child support calculation, the trial court must enter a specific finding on the record that the presumed amount, after consideration of all relevant factors, is unjust or inappropriate. *Malawey v. Malawey*, 137 S.W.3d 518, 527 (Mo.App.2004) (*citing* Rule 88.01(b)). Here, the court made a specific finding that the PCSA of $2,344, after consideration of all relevant factors, is rebutted as unjust and inappropriate.

We review the trial court's application of the *Woolridge* procedure under *Murphy v. Carron, supra. Conrad*, 76 S.W.3d at 308. Once we determine that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review the court's decision to rebut its PCSA calculation for an abuse of discretion. *Id.*

Father incorrectly argues that the court erred in arriving at the child support amount by "extrapolating" the figure from the percentages used in the Form 14 guidelines. Mother stated at trial that she was requesting child support in the amount of $7,198 per month based on an extrapolation of the percentage of the parties' combined incomes. This "straight-

**1.** All statutory references are to Revised Statutes of Missouri 2000, unless otherwise noted.

line extrapolation" method was specifically rejected by the Missouri Supreme Court in *Mehra v. Mehra,* 819 S.W.2d 351 (Mo. banc 1991). In *Mehra,* where the parties' combined incomes exceeded the Form 14 maximum, the trial court used such a method, derived from the support-to-income ratio found in the guidelines, to calculate the child support award. *Id.* at 354. The Court found the trial court's mode of extrapolation unjustified in that case. *Id.* Here, although Mother admitted that her *request* for $7,198 per month in child support was based on an extrapolation calculation, it is obvious that the trial court did not adopt Mother's errant proposal and instead used another method in arriving at the $4,000 figure it awarded. Thus, the trial court's determination is not subject to attack under *Mehra* in this case.

Father also attacks the award on the basis that Mother offered no credible evidence as to the children's expenses that would support a finding of "unjust and inappropriate" and justify a deviation from the Form 14 PCSA. Father says Mother offered "negligible evidence" to show that the PCSA was insufficient to meet the children's reasonable and necessary expenses.

As the party seeking to rebut the Form 14 amount, Mother bore the burden of showing that it was unjust or inappropriate. *See Conrad,* 76 S.W.3d at 308. Mother testified at trial and presented her statement of income and expenses to support her request for an increase in child support. Mother also showed that Father's income had risen substantially—to $60,000 per month, or $720,000 per year. The total of the children's pro-rated shared living expenses and their "other living expenses" (those not shared with Mother) is $4,255. The trial court's award of $4,000 was in the vicinity of the total of the amounts shown for the children's ex-

penses on Mother's expense statement. The "other living expenses" included $757 for the children's "other expenses." When asked about those expenses, Mother was unprepared to give specifics. She testified vaguely about the children's extracurricular activities and discussed some of the costs associated with those. She said both children are involved in karate, for which there is a monthly expense and a testing fee every three to four months of $500. Mother said Rachel needed a new $3000 trumpet and that she needs private music lessons at approximately $60 to $80 per lesson. Costs associated with Rachel's basketball activities included initial fees of between $60 and $500 and $40 per game, plus costs for uniform, shoes, travel. Mother also discussed other activities the children could enjoy if the amount of support were increased, including tutoring, water polo, tournaments, travel fees for activities, and private schooling. Mother, however, did not attach dollar figures to those activities, and she was not specific about the children's potential participation in the activities. Mother's attorney assumed that such additional expenses for activities would be justified so that the children could participate in a higher standard of living generally.

Father contends that Mother's evidence of the children's expenses amounted to nothing more than a "wish list." Such a "wish list" is insufficient to support a finding of "unjust and inappropriate" and an upward deviation from the Form 14 guidelines, Father says. He cites *Brooks v. Brooks,* 871 S.W.2d 42 (Mo.App.1993) (modification judgment reversed largely due to unsubstantiated and speculative expenses claimed by the mother), and *Searcy v. Searcy,* 85 S.W.3d 95 (Mo.App.2002) (modification judgment reversed and remanded where evidence of extraordinary expenses consisted of speculation as to possible future expenses).

This case *is* reminiscent of the *Searcy* case. In *Searcy,* the mother's income and expense statement simply listed $60 for lessons, and her testimony failed to clarify whether $60 represented the cost of past dance lessons or the combined cost of pending dance and piano lessons. 85 S.W.3d at 101. The record in *Searcy* contained no evidence regarding the current cost of those lessons or evidence that the mother had priced the cost of new dance classes or piano lessons. *Id.* We held that the evidence was too speculative to support the inclusion of those expenses in the child support award and reversed and remanded for further proceedings to allow the trial court to hear additional evidence on the issue. *Id.*

Here, much of Mother's testimony with regard to the children's "other expenses" also was speculative and unsubstantiated. Mother provided little detail to support her $757 figure for the children's "other expenses." When asked whether the children's expenses for karate, polo, and basketball amounted to $757 a month or $9,000 per year, Mother said, "[N]o, it's not $9,000. I would say that probably included other things, and I don't have an itemized list of that at present[.]" Mother discussed the children's current extracurricular activities and future activities she would like for them to be involved in, but she provided little information as to the cost, the need for, or the likelihood that the children would indeed participate in those activities.

A party's testimony as to the children's expenses can be sufficient evidence on which to base a child support determination. *Lokeman,* 146 S.W.3d at 428. In this case, however, Mother's testimony was vague and imprecise. Because Mother's attorney relied upon the wrong approach (a straight-line extrapolation approach), Mother was not appropriately prepared to present specifics about the "other expenses" for which she sought Father's support. The court obviously made an effort to arrive at a fair amount for the award with the evidence it had.

Father is correct that our cases have said that rebuttal of the PCSA merely on the basis of a parent's enhanced ability to pay (without evidence that the needs exceed the PCSA) is improper. *See, e.g., Windsor v. Windsor* 166 S.W.3d 623, 635 (Mo.App.2005); *Haden,* 37 S.W.3d at 864. We believe, however, that the trial court has some discretion to employ common sense in evaluating the children's expenses when the parent has done a poor job of presenting the case for the children's needs. Both Rule 88.01 and section 452.340.9 require the trial court to examine *all relevant factors* in arriving at an amount for child support, including those found in section 452.340.1. That statute permits the court to award an amount "reasonable" or "necessary" for the child's support after considering all relevant factors, including, *inter alia,* the children's financial needs, the financial resources of the parents, and the standard of living the children would have enjoyed had the marriage not been dissolved. Section 452.340.1.[2] We do not see that the ex-

---

**2.** The section 452.340.1 factors are:

  (1) The financial needs and resources of the child;

  (2) The financial resources and needs of the parents;

  (3) The standard of living the child would have enjoyed had the marriage not been dissolved;

  (4) The physical and emotional condition of the child, and the child's educational needs;

  (5) The child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with [those] arrangements; and

penses expressed must be matters of strict necessity in view of Father's affluence. In addition, the Form 14 Directions and Comments for Use state that where the parties' incomes exceed the maximum guideline amount of $20,000, the court should consider that fact in deciding whether to deviate from the PCSA. *See* Comment G to Line 12.

The court did not specify the factors on which it based the rebuttal of the PCSA. The court is not required to so specify in the absence of a proper request. *Waite v. Waite*, 21 S.W.3d 48, 52 (Mo.App.2000). *See also* Rule 88.01(b) (unless a party files a request pursuant to Rule 73.01(c), a written finding that the PCSA, after consideration of all relevant factors, is unjust or inappropriate is sufficient to rebut presumption that PCSA is correct). The factors that caused the rebuttal and the deviation from the PCSA must be apparent from the record. *Gerhard*, 985 S.W.2d at 931. *See also Ponce v. Ponce*, 102 S.W.3d 56, 60 (Mo.App.2003) (any deviation from the Form 14 amount must be supported by the evidence). Here, it is obvious 1) that Father's income has tripled in recent years and Father has abundant resources; 2) the children would have enjoyed a higher standard of living in the absence of the divorce.

We will not substitute our judgment for that of the trial court on whether the PCSA was unjust or inappropriate "providing there is credible evidence to support the trial court's beliefs." *Gerhard*, 985 S.W.2d at 930. There was credible evidence of the foregoing factors. Thus, the court could reasonably rebut the PCSA.

Of course, even if the PCSA is unjust and inappropriate, there still must be evidence to support the court's award. The abundant resources of Father do not excuse Mother from itemizing particular expenses. Father's resources and his own standard of living might justify the court in not closely scrutinizing the reasonableness of what some might consider luxury expenses. Father, in his expense statement, managed to itemize expenses of $51,000 per month, so one would think that Mother could have managed to itemize expenses of $6,000 or so. We will try to avoid punishing the children when it is obvious that those who were supposed to advocate for them were not well prepared. Thus we reverse and remand, as in *Searcy*, for further proceedings to allow the trial court to hear additional evidence on the children's needs.

## Point I: Overnight Custody Allowance

Father argues in his first point that the trial court erred in accepting Mother's Form 14 presumed child support amount of $2,344, because it did not include an allowance for Father's "overnight visitation."[3] Father says that because he exercises at least thirty-six nights of overnight custody per year, he is entitled to a six-percent adjustment on line 11 of the Form 14. He says that with this adjustment, the correct PCSA is $2,189, rather than $2,344.

Father is correct that thirty-six nights of overnight custody per year entitles the parent obligated to pay support to an adjustment of six percent on the Form 14. *See* Directions, Comments for Use and Examples for Completion of Form 14, Line 11. It is also true, however, that there are circumstances under which the overnight custody adjustment on line 11 may be rebutted. *See* Comment B to Line 11. It is

(6) The reasonable work-related child care expenses of each parent.

**3.** Use of the term "visitation" where the parties are awarded joint custody is incorrect. *See Loumiet v. Loumiet*, 103 S.W.3d 332, 337–38 (Mo.App.2003).

possible that the court considered the overnight custody adjustment, and simply rebutted it along with the rebuttal of the higher PCSA. Because we are remanding this case for further proceedings on other issues, the court can consider this issue of the adjustment.

### Point III: Retroactive Child Support

In his final point, Father contends that the court erred in ordering him to pay retroactive child support. Pursuant to section 452.340.1, the court is permitted to award child support "retroactive to the date of filing the petition." Here, Father filed his motion to modify child support on July 7, 2003, and Mother's cross-petition was filed on September 12, 2003. Thus, the order that Father pay child support retroactive to October 1, 2003, falls within the statutory time limitations.

The trial court has considerable discretion in making child support awards retroactive. *Honderick v. Honderick*, 984 S.W.2d 205, 214 (Mo.App.1999). "In deciding whether to order a modification retroactive, the fact finder should consider all factors relevant to the issue and balance the equities as called for by the facts and circumstances of the particular case." *Id.* Based on the evidence presented in this case, we see no indication that the trial court abused its discretion in making the child support award retroactive to a month after Mother filed her cross-petition.

Father's "Point Relied On" on this issue essentially rehashes his arguments from Point II. It states that the trial court erred and abused its discretion in ordering Father to pay child support of $4,000 per month retroactive to October 1, 2003, because there was a lack of evidence to support the finding that the Form 14 amount is unjust or inappropriate. Father's point does not actually contest the retroactive nature of the award or its effective date;

rather, it concentrates on the trial court's error in arriving at the *amount* of the award. In other words, Father essentially argues that because the court "originally erred" in setting the *prospective* child support amount, it also erred in setting the *retroactive* amount. *See Lokeman,* 146 S.W.3d at 429–30.

As noted, we are remanding to the trial court for additional proceedings with regard to other issues, including Father's assertion in Point II that the court erred in setting the amount of the child support award. On remand, the court will be guided by its decision regarding the amount of the award in deciding whether to designate that same amount retroactive.

### Additional Issues on Remand

We observe, *sua sponte,* that there are additional issues that the parties failed to raise and the trial court did not address. The first of these issues is the court's failure to include a provision in the judgment ordering Father to pay Joshua's college education expenses (based on Father's stipulated agreement to do so). The parties stipulated at the outset that custody of Joshua would be transferred to Father, that the child support provisions with regard to Joshua would terminate, and that Father would pay all of Joshua's college expenses. The court noted at trial that Father had agreed to pay all of Joshua's college expenses and indicated that the judgment would include an order to that effect. The court stated: "Dr. Lewey said he would pay the tuition. .... Dr. Lewey will pay the tuition. .... That will be in the order."

When the court issued its judgment of modification, it ordered Father's address to be designated as the residence of Joshua for mailing and educational purposes. It adopted Father's parenting plan for Joshua, and stated that no child support

would be ordered for him. The judgment did not, however, include a provision specifically ordering Father to pay for Joshua's college education; nor did the adopted parenting plan include such a provision.

Because lack of clarity is not in the best interests of the parties or the children, we instruct the trial court, on remand, to specifically include a provision in the judgment ordering Father to pay the expenses associated with Joshua's college education, as stipulated to by the parties at trial. *See Ponce*, 102 S.W.3d at 64 (court's order in docket entry that parent pay college expenses not sufficient; remanded for inclusion of specific order in the modification judgment to that effect for sake of clarity and certainty).

■ The second issue we believe the court should deal with on remand is the lack of either a new provision or a statement that the prior provision remains in effect with regard to payment of the college education expenses of the other two children, Aaron and Rachel. The earlier May 2002 modification judgment included a provision requiring the parties to pay a "proportionate share based on their respective incomes" for *each* child's college expenses. The modification judgment that is the subject of this appeal did not include a provision dealing with the college education expenses for the two children still in Mother's custody, nor did it include a statement that all prior orders not specifically modified shall remain in full force and effect.

Neither party asked for a ruling on college expenses for the two children (both of whom are approaching college-age), and no evidence was introduced with regard to that issue. A parent is not *automatically* liable for the cost of a child's post-secondary education. *See Shiflett v. Shiflett*, 954 S.W.2d 489 (Mo.App.1997). Nevertheless, because this issue was included in the earlier judgment but not provided for in this judgment in any way, for the sake of clarity and certainty, we again direct the court, on remand, to address this important issue.

For the same reasons, the court, on remand, should include a provision in this judgment—as it did in its earlier May 2002 judgment—that all prior orders not specifically modified shall remain in full force and effect. This will clarify the status of issues that were not the subject of this modification proceeding (*e.g.,* parenting plan), as well as those that necessarily should have been addressed in this modification judgment but were not (*e.g.,* payment of college expenses).

### Conclusion

For the foregoing reasons, we reverse the trial court's decision and remand for additional proceedings in accordance with this opinion.

ULRICH and BRECKENRIDGE, JJ., concur.