Rhonda C. LOKEMAN, Respondent,

v.

Mark C. FLATTERY, Appellant.

No. WD 62821.

Missouri Court of Appeals,
Western District.

Oct. 19, 2004.

Marilyn Marcia Shapiro, Kansas City, MO, for Appellant.

Gail Berkowitz–Gifford, Kansas City, MO, for Respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

Mark Flattery ("Father") appeals the trial court's modification of the decree that dissolved his marriage to Rhonda Lokeman ("Mother"). Father claims that the trial court erred in (1) awarding child support in the amount of $1,047 per month to Mother, (2) awarding retroactive child support in the amount of $4,698 to Mother, (3) and awarding attorneys' fees in the amount of $8,190 to Mother. We reverse the portion of the decree dealing with retroactive child support and affirm in all other respects.

**Factual Background**

The parties' marriage was dissolved on June 30, 1999. The parties had two daughters, who, at the time of the dissolution, were eight years old and four years old, respectively. The original decree awarded the parties joint legal and physical custody of their children. The decree also ordered Father to pay Mother $752 per month for the support of the two children.

On January 15, 2001, Father filed a "motion to modify child support and visitation." Father requested, *inter alia,* that the child support be decreased, alleging that his income had decreased. One month later, Mother answered by filing her own motion to modify child support and visitation and requesting an increase in child support. The parties settled the visitation issues prior to trial.

As for the child support issues, Father submitted a Form 14 with a presumed child support amount (PCSA) of $605 per month. Mother submitted two Form 14s, one with her former full-time salary and the other with her then part-time salary. At the time Husband filed his modification motion (January 2001), Mother worked full-time for the Kansas City Star, receiving a yearly salary of around $70,000. However, in September 2002, Mother became a part-time employee. Accordingly, her first Form 14 had a PCSA of $890 per month, while the second had a PCSA of $1,047 month, reflecting her change in salary.

On March 10, 2003, the court issued its "Judgment of Modification," in which the court adopted Mother's second Form 14. Accordingly, it increased Father's child support payments to $1,047 per month. The court found that Father's income had increased, Mother's income had decreased, and the children's expenses had increased. Moreover, because the matter had been pending for more than two years, the court ordered Father to pay retroactive child support. The court awarded Mother such support for January 2001 through August 2002 in the amount of $890 per month (based on her full-time salary) and for September 2002 through February 2003 (based on her part-time salary) in the amount of $1,047 per month. Finally, the court ordered Father to pay a portion of

Mother's attorneys' fees in the amount of $8,190.

Father appeals.[1]

## Child Support

In his first point on appeal, Father argues that the trial court's order modifying child support was against the weight of the evidence and an abuse of discretion.

*Murphy v. Carron* governs our review of a child support modification order. 536 S.W.2d 30 (Mo. banc 1976). We must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law. *Id.* at 32. We defer to the trial court's credibility determinations and view the evidence in the light most favorable to the judgment. *Searcy v. Searcy,* 85 S.W.3d 95, 99 (Mo.App.2002).

■ In calculating child support in any proceeding, including a modification proceeding, section 452.340.8 and Rule 88.01 require the trial court to follow a two-step procedure. *Conrad v. Conrad,* 76 S.W.3d 305, 308 (Mo.App.2002). First, the trial court must determine and find for the record the presumed child support amount pursuant to Form 14. *Id.* Second, the court, after considering all relevant factors, must determine whether to rebut that amount as being unjust or inappropriate. *Id.* Here, the trial court found the presumed child support amount to be $1,047 and refused to rebut this amount.

Child support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms of the original award unreasonable. § 452.370.1, RSMo 2000. Here, the trial court found such changed circumstances—i.e., Father's income had increased, Mother's income had decreased, and the children's expenses had increased. Accordingly, the trial court increased Father's child support payments from $750 per month to $1,047 per month.

Father alleges four sub-points to support his contention that the court erred in its modification of child support.

■ First, Father argues that in its Form 14 calculation, the court failed to impute income to Mother commensurate with her job skills.

Mother has worked for the Kansas City Star since 1980. In 2001, she earned about $70,000 year while fulfilling three separate positions—editorial board member, op-ed editor, and columnist. However, in September 2002, she became a part-time employee, retaining only the columnist position. Mother testified that this was an involuntary change, caused by a change in management. As a result, her income decreased to around $32,000 per year. Mother included this figure on her second Form 14, which the court adopted.

In light of her twenty years of writing experience and her $70,000 salary before September 2002, Father argues that Mother is currently "underemployed." According to Father, if Mother uses her best efforts, she could obtain a job in the same field with a $70,000 salary. Mother testified that in order to obtain a full-time position commensurate with her prior position, she would need to move from the Kansas City area. However, she was unwilling to "uproot" the children. The court found that the reduction in income was beyond her control and, thus, did not impute income to her.

---

1. In her brief, Mother asks us to dismiss Father's points on appeal because they do not satisfy Rule 84.04(d). We deny that request in accordance with our discretion. *See Woodson v. City of Independence,* 124 S.W.3d 20, 24 (Mo.App.2004).

In calculating child support, the trial court has discretion to impute income to an underemployed parent. *Rivers v. Rivers,* 21 S.W.3d 117, 124 (Mo.App.2000). Under proper circumstances, the trial court may impute income to a parent based on what that parent could earn through his or her best efforts to gain employment proportionate to his or her capabilities. *Burton v. Donahue,* 69 S.W.3d 76, 79 (Mo.App.2001). What constitutes proper circumstances depends upon the facts and must be determined on a case-by-case basis. *Id.*

Here, Mother did not voluntarily reduce her income. Her testimony that the change to part-time employment was the result of new management was uncontroverted. Nor is there any evidence that Mother's failure to obtain a higher-paying job was an attempt to evade her duty to support her children. Mother explained that she could not find another full-time job in Kansas City because it is "a one newspaper town." Also, she testified that she did not seek employment in another city for the sake of her children. Father does not contend that she refused any specific job offers in the Kansas City area. Thus, we conclude that the trial court reasonably declined to impute income to Mother based on her ability to work full time.

Father also complains that the trial court improperly calculated the children's expenses. At trial, the court admitted Mother's statement of the children's expenses, in which she included "other extraordinary child rearing costs" associated with multiple extracurricular activities— *e.g.,* piano, swimming, dance, and soccer lessons, and summer camp. Mother testified that these expenses were the "projected expenses" for the coming year (2002). In light of her statement and her testimony, the trial court found that the children's expenses had increased. Accordingly, the trial court designated $527, including $276 for the extracurricular activities, as "other extraordinary child rearing costs" in its Form 14 calculation.

Form 14, line 6(e), allows the trial court to take into account the broad category of extraordinary child-rearing costs. The Directions, Comments for Use and Examples for Completion of Form 14, Line 6e, Comment A, provide examples as to what may be appropriate as such an expense:

'Other extraordinary child-rearing costs' may include, but are not limited to, the cost of tutoring sessions, special or private elementary and secondary schooling to meet the particular educational needs of a child, camps, lessons, travel and other activities intended to enhance the athletic, social or cultural development of a child.

Father complains that the piano lesson expenses of $85 per month should not have been included. Father points out that the only documentation provided was for summer 2001, and Mother testified that at the time of trial no child was taking lessons. However, Mother testified that the lessons would resume later in the year (2002). This testimony was not contradicted, and the court, as arbiter of witness credibility, was within its discretion in choosing to believe it. *See Elliott v. Elliott,* 920 S.W.2d 570, 574 (Mo.App.1996).

Father argues that the expenses associated with summer care should not have been included either. In her list of extracurricular expenses, Mother included $25 for "summer camp lunch" fees. Father alleges that the expense of summer lunches is a non-extraordinary expense. According to Father, "the cost of food should be included in the regular child support amount." However, Father cites no authority in support of his contention that the court could not consider the ex-

pense to be a camp expense. Form 14's Directions for Completion specifically authorize the court to include the "cost of . . . camps" as an extraordinary expense. Thus, the trial court did not err in including the cost of the "summer camp lunches," which is undoubtedly a cost of attending the camp, in this category.

Regarding the expenses associated with the dance, swimming, and soccer lessons, Father contends that the court's figure exceeded that which the evidence supports. Mother listed average monthly expenses of $43 for dancing, $10 for swimming, and $28 for soccer. Father alleges that Mother's documentation offered at trial does not support these figures. Nevertheless, Father does not cite any portion of the legal file showing Mother's documentation. A careful review of the file reveals that it does not contain the exhibit about which Father complains. In any event, Mother testified to these expenses at trial:

Q. On average, have the expenses for the children been $276, as reflected [in your statement], on a monthly basis?
A. On average as reflected at that time, yes.
Q. Some months I assume there's less expenses and some more; is that correct?
A. Yes.
Q. Have you taken into consideration all of the expenses [including the expenses for piano, swimming, and soccer lessons] which are reflected on page one [of your statement] in determining what these expenses have been?

A. Yes.

Mother's testimony as to the children's expenses is sufficient evidence on which to base a child support determination. *Gal v. Gal*, 937 S.W.2d 391, 396 (Mo.App.1997).

The trial court heard the evidence in this case and determined that extraordinary expenses of $191 per month for piano lessons, swimming lessons, soccer lessons, dance lessons, and summer camp lunches were reasonable and should be included in the Form 14 calculation at line 6e. We find that the evidence supported the inclusion of that amount in the trial court's Form 14 calculation.

■ Next, Father charges that the court failed to consider the factors required by section 452.340. Specifically, Father complains that the trial court failed to take into account his ability to pay the increased child support.

The court found the presumed correct child support amount to be $1,047 per month. That amount can be rebutted provided that the court finds it is unjust or inappropriate after consideration of all relevant factors. § 452.340.9; *see also Ponce v. Ponce*, 102 S.W.3d 56, 60 (Mo.App.2003). Section 452.340.9 provides that these factors include those set forth in section 452.340.1, one of which is the "financial resources and needs of the parents."[2] Thus, Father's claim here is that the trial court erred in failing to rebut its Form 14 amount due to his inability to pay.

**2.** The complete list of factors set forth in section 452.340.1 is as follows:
(1) The financial needs and resources of the child;
(2) The financial resources and needs of the parents;
(3) The standard of living the child would have enjoyed had the marriage not been dissolved;
(4) The physical and emotional condition of the child, and the child's educational needs;
(5) The child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and
(6) The reasonable work-related child care expenses of each parent.

Father points out that considering the child support award ($1047), the retroactive support award ($200 per month for a total of $4,698), and the attorneys' fees award ($100 per month for a total of $8,190), the court ordered Father to pay $1,465 per month. Father alleges that when this figure is deducted from his net income of $2,800 per month, he is left with only $1,335 to meet his needs. This figure, according to Father, is inequitable because it requires him to pay "more than one-half" of his income to Mother.

Father cites no authority in support of his contention that an award is inequitable simply because it exceeds half of the paying parent's income. Nor does he point to anything in the record that suggests the trial court did not consider his ability to pay in setting child support. Father has the burden to show that the trial court's award of child support was unjust or inappropriate. *See Searcy*, 85 S.W.3d at 100.

In any event, there was sufficient evidence from which the court could reasonably have concluded that Father was able to meet his support obligation. The trial court found that Father's gross income is $4,156 per month, which includes income received from rental property. Father provides no citation to the record for his contention that his net income is $2,800 per month. Father also neglects to provide support for his claim that the trial court is required to consider the attorneys' fees award when setting child support. The court ordered Father to pay child support in the amount of $1,247 per month (including $200 per month for child support retroactive to January 1, 2001, for a total of $4,698). The trial court could reasonably conclude that Husband's monthly income of $4,156 is sufficient to cover $1,247 per month.

█ Finally, Father complains that the court failed to credit him for a monthly "tithe" to his church, where the parties' children also attend elementary school. Father claims that he makes a $50 monthly tithe that he "intends" to be applied toward the tuition. According to Father, the court did not credit him for this as tuition in its Form 14. However, in Mother's extraordinary expenses, the court included a tithe she paid for the same purpose, Father says.

We assume that Father is referring to the $250 in tuition payments that the court apparently included in Mother's extraordinary expenses. Mother testified to these payments, which included a $210 monthly tithe and a $492 yearly registration fee (or about $40 per month). However, the record contains no evidence documenting that Father's tithes were payment for the children's tuition. Father also provides no authority for his contention. Accordingly, we cannot find that the trial court erred.

█ An award of child support is within the sound discretion of the trial court. *McMickle v. McMickle*, 862 S.W.2d 477, 484 (Mo.App.1993). We will not disturb the award unless there is a manifest abuse of that discretion or the evidence is "palpably insufficient" to support it. *Elliott*, 920 S.W.2d at 574. Because neither ground applies here, we affirm the court's modification of child support from $752 per month to $1,047.

### Retroactive Child Support

In his second point on appeal, Father argues that the trial court erred in ordering him to pay retroactive child support in the amount of $4,698 to Mother.

The trial court may award child support retroactive to the date of the filing of the petition. § 452.340.1. Here, Father filed his motion to modify in January 2001, Mother filed her motion to modify in February 2001, and the trial court issued its order in

March 2003. The court denied Father's motion to modify child support and sustained Mother's motion. The court awarded Mother child support retroactive to January 1, 2001. For the time period of January 2001 through August 2002, the court awarded $2,898, relying on a monthly child support figure of $890. For September 2002 through February 2003, the court awarded $1,800, relying on a monthly figure of $1,047 (the same amount that the court awarded for prospective child support). In setting these amounts, the court gave Father credit for all child support that he had previously paid. The court ordered Father to pay the arrearages from both time periods in the amount of $100 per month, for a total of $200 per month, until completely paid.

■ Father first claims that the court should not have awarded child support retroactive to January 1, 2001, because Mother did not file her motion to modify until February 15, 2001. We agree.

Apparently, the trial court inadvertently used January 1, 2001, as the retroactive date because Father filed his motion at that time. The trial court had the authority to make a post-dissolution award of child support retroactive to the filing of the motion to modify. *Otey v. Otey,* 723 S.W.2d 600, 602 (Mo.App.1987). Father's motion, however, was denied, while *Mother's* motion was sustained. Thus, the trial court was authorized to award support retroactive to the date *Mother* filed her petition. Because Mother filed her motion to modify on February 15, 2001, the trial court should have awarded child support retroactive to that date, instead of the date Father filed his motion. Mother concedes this point. We do not have the information necessary to enter the judgment the court should have entered pursuant to Rule 84.14. Thus, we remand and direct the court to recalculate the value and

amend the judgment to the degree necessary.

■ Father also contends that the court incorrectly calculated the figure of retroactive support for September 2002 through February 2003. The trial court awarded $1,800 for these six months, for an average of $300 per month. Father points out that the court only increased the support by $295 per month (from $752 to $1,047). Thus, Father contends that the figure for retroactive support during these six months should have been no more than $1,455.

Father's calculation is based on his contention that the $1,800 retroactive award was for October 2002 through February 2003, a total of *five* months. At the end of its judgment, the court "ordered, adjudged, and decreed that [Father] shall pay to [Mother] ... the sum of ... $1,047.00 per month, as and for child support beginning *October* 1, 2002." (Emphasis added). The record reveals, however, that this statement was apparently a mistake.

In its "Conclusions of Law," which appear earlier in its judgment, the court ordered the $1,800 retroactive award for *September* 2002 through February 2003. The court's findings and the evidence reflect that September 2002 is the correct date. The court found that in September 2002, Mother became a part-time employee and her income decreased to around $32,000. Mother's testimony at trial is consistent with this finding. Also, her testimony and her calculation of the arrearages (which she offered as an exhibit) show that she requested retroactive child support beginning September 2002 in light of her reduction in income. No objection was made to her calculation, and the court admitted the exhibit into evidence.

The court's modification of child support from $752 to $1,047 was based on Mother's income reduction. Naturally, then, an award of retroactive child support based on the $1,047 figure (which was calculated based on her reduced income) should be retroactive to the month in which her income was reduced, September 2002. We conclude that the $1,800 award was for a six-month period beginning in *September 2002* rather than a five-month period beginning in October 2002. Because the court increased child support by $295 to reflect Mother's reduction in income, the total amount for those six months would be $1,775. The court apparently rounded that total to $1,800. A rounding up of $25 on this award was not so "arbitrary and unreasonable as to shock [our] sense of justice." *Webb v. Fox,* 978 S.W.2d 16, 23 (Mo.App.1998) (citing same rationale for a rounding up of $3.48 on an award of attorneys' fees). Thus, the court did not abuse its discretion in awarding $1,800 in retroactive child support.

■ Next, Father complains that the court should not have included expenses associated with the children's extracurricular activities in its retroactive support calculation. Father argues that it was inequitable for the court to do so in this case. According to Father, Mother chose the activities of the children without obtaining Father's input even though they shared joint legal custody. Father contends that he was unaware of these expenses. Had she notified him, he could have had "some control over the cost" of these activities, he says.

Once again, Father cites no authority that prohibits the trial court from including the extracurricular activities in its retroactive child support calculation. In fact, section 452.340.1 authorizes the court to order retroactive child support, and, as Father acknowledges, line 6(e) of Form 14 allows the court to include certain extracurricular activities in its calculation. In any event, there is evidence that Father was fully aware of these activities and did not object to the children's participation in them. At trial, Mother testified as follows:

Q. Attached to Exhibit 17 [Mother's statement of the extraordinary child-rearing costs] are the actual registration payments [for the extracurricular activities]; has this information also been provided to [Father]?

A. He's fully aware of the activities and on occasion has attended recitals. He's assistant coached at the oldest child's soccer games, on occasion [he's] taken them [to the games]. He's attended two piano recitals. So he's fully aware, as far as I know.

Q. Has he ever objected to any of the activities of the children?

A. No, he's never said a word.

The trial court was free to believe Mother's testimony. *See Wright v. Wright,* 975 S.W.2d 212, 215 (Mo.App.1998).

■ Finally, Father repeats two arguments he makes under Point I regarding the prospective child support award. First, he contends that the court failed to consider his ability to pay in setting the retroactive child support amount. Second, he argues that the court based this amount on incorrect calculations—*i.e.,* it overstated the amount of expenses associated with the children's extracurricular activities and failed to impute income to Mother. In other words, he essentially argues that because the court "originally erred" in setting the prospective child support amount, it also erred in setting the retroactive child support amount. We reject both of these arguments for the reasons stated under Point I.

## Attorneys' Fees

In his final point on appeal, Husband argues that the trial court erred when it awarded Mother attorneys' fees in the amount of $8,190.

Our review of an award of attorneys' fees is limited to whether the court abused its discretion. *In re Marriage of Eikermann*, 48 S.W.3d 605, 613 (Mo.App. 2001). To show an abuse of discretion, the complaining party has the burden of showing that the trial court's judgment is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

Section 452.355.1 governs an award of attorneys' fees. That statute, in relevant part, provides:

[T]he court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

We find no abuse of discretion in this case. The trial court may consider the parties' conduct in deciding whether to award fees. *See id.* Father contends that his conduct during the course of this proceeding does not support the award. In his motion to modify, Father requested a reduction in his child support payments, alleging that his income had decreased since the dissolution. His testimony at trial, however, flatly contradicted his allegation:

Q. What is your income … ?

A. I make about $45,000 a year.

Q. At the time of the dissolution, what was your income; do you recall?

A. About 35[,000], 34[,000].

Q. So, you are actually making more money at this time?

A. Yes.

Thus, Father's income had actually increased by about $10,000. The trial court noted this discrepancy in its findings. It could reasonably have based its attorneys' fees award on the discrepancy as well.

The parties' income is another factor the court may consider. *Crews v. Crews*, 949 S.W.2d 659, 672 (Mo.App.1997); *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 950–51 (Mo.App.1993) (holding that "[h]usband's greater ability to pay Wife's attorney's fees was sufficient to support the award"). Here, Mother's gross income is $2,708 per month, while Husband's gross income is $4,156 per month. Mother incurred attorneys' fees in the amount of $13,296 over a two-year period. In awarding her $8,190, the court awarded her around 62% of the fees. Thus, she was still responsible for $5,106, or 38%, of the fees. In light of Husband's actions and the disparity in income between the parties, we cannot say that this award is "so arbitrary and unreasonable as to shock [our] sense of justice."

Father points out that the duration of the trial was less than an hour and Mother's statement shows that her attorneys worked ninety hours to prepare for trial. Father insinuates that ninety hours far exceeds that which was necessary to prepare for this matter. However, "[t]he trial judge is considered an expert in the necessity, reasonableness and value of attorney's services." *Vehlewald*, 853 S.W.2d at 950. Father fails to show why this presumption does not apply to this case.

Finally, Father complains that Mother had sufficient resources to pay the fees. However, "[a] spouse's inability to pay is not a requirement for awarding attorney's fees." *Bullard v. Bullard,* 969 S.W.2d 880, 884 (Mo.App.1998). Instead, section 452.355.1 directs the trial court to consider "*all* relevant factors." (Emphasis added). There is no evidence that the trial court neglected this direction here. Point denied.

### Conclusion

For the foregoing reasons, we reverse the portion of the judgment awarding retroactive child support and remand for recalculation of such support in a manner consistent with this opinion. We affirm the judgment in all other respects.

ELLIS and HARDWICK, JJ., concur.