**Randall Gene DENNEY, Appellant,**

v.

**Terri Anne (Denney) WINTON, Respondent.**

No. 26463.

Missouri Court of Appeals, Southern District, Division One.

Feb. 10, 2006.

Richard A. Ong, Melton & Herrin, P.C., Cassville, MO, for Appellant.

No brief filed by Respondent.

PAUL McGHEE, Senior Judge.

Randall Gene Denney ("Father") appeals from a judgment increasing and extending his child support obligation, ordering him to pay Terri Anne (Denney) Winton ("Mother") one-half of health-related expenses for one child, and awarding her attorney fees. We affirm in part and reverse and remand in part.

Father and Mother have two children from their marriage to each other. Adrienne was born October 28, 1982, and Abbey was born May 24, 1985. The trial court dissolved their marriage on July 20, 1989, approved their separation agreement, and provided for the custody and support of the children. The court modified the dissolution judgment in 1993, by reducing Father's child support obligation to $331.00 per month.

Mother filed a motion to modify on April 28, 2000, that was tried on January 29, 2004. She requested in her motion that the child support amount be increased from the date of filing, that Father be required to pay one-half of the extraordinary medical expenses for the children, and that he be required to pay her attorney fees. Father did not ask for any affirmative relief in his answer, other than for his attorney fees.

The trial court found that application of the guidelines and criteria of Rule 88.01 would result in a change of more than twenty percent of the existing child support amount, thus making a prima facie showing of a change of circumstances so substantial and continuing as to make the existing terms of child support unreasonable. The court also found that "Adrienne Quinn Denney is *disabled* (emphasis added) due to injuries sustained in an automobile accident and child support for her shall continue beyond the age of majority." The judgment, dated February 24, 2004, ordered Father to pay Mother "beginning April 28, 2000, the total sum of $635.00 per month for two children until emancipation." It further ordered Father to pay Mother $10,010.92 for one-half of the health-related expenses incurred for Adri-

enne after April 20, 2000, and $2,000.00 for her attorney fees.[1]

■ Father relies on five points in his appeal, while Mother has not submitted a brief. The standard of review governing modification of child support provisions is the same as in any other court-tried case. The judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, or unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Windsor v. Windsor,* 166 S.W.3d 623, 628 (Mo.App. W.D.2005), *citing Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976); *Winter v. Winter,* 167 S.W.3d 239, 242 (Mo.App. S.D.2005); *Hoberock v. Hoberock,* 164 S.W.3d 26, 29–30 (Mo.App. E.D. 2005). "A child support provision will be upheld unless the trial court abused its discretion or erroneously applied the law." *In re Marriage of Ledford,* 28 S.W.3d 465, 467 (Mo.App. S.D.2000), *quoting In re Marriage of Gerhard,* 985 S.W.2d 927, 930 (Mo.App. S.D.1999). An abuse of discretion will be found only where the trial court's ruling is clearly against the logic of the circumstances or is arbitrary or unreasonable. *Id.*

A trial court is free to believe or disbelieve all, part or none of the testimony of any witness. *Lueckenotte v. Lueckenotte,* 34 S.W.3d 387, 394 (Mo.banc 2001). We give deference to the trial court's determination of the credibility of the witnesses; and the evidence, with all of the inferences flowing therefrom, is viewed in the light most favorable to the judgment. *McLaurin v. McLaurin,* 171 S.W.3d 150, 151–52 (Mo.App. E.D.2005); *Johnston v. Dunham,* 172 S.W.3d 442, 447 (Mo.App. W.D. 2005).

■ As his first point, Father asserts that the trial court erred in ordering him to pay child support for Adrienne past the age of majority. "Generally, a child support obligation terminates when the child reaches the age of eighteen." *Windsor,* 166 S.W.3d at 630. At the time of trial, Adrienne was twenty-one years old and a student at Drury University in Springfield. She suffered extremely severe injuries in an automobile accident on September 8, 1997, when she was fourteen years old. She was in a coma for eight days, and she endured hospitalizations, surgeries, counseling, therapy, and other treatments. She was taking medications at the time of the trial and was to undergo another surgery after the trial.

Notwithstanding the severity of her injuries, Adrienne was able to return to high school and participate in speech and debate, and in academic and other clubs, including being president of the National Honor Society at her school. She graduated from high school on May 18, 2001, with a class ranking of sixth out of 118 students. That summer, she worked at a convenience store in Monett before moving to Springfield to attend Drury University in the fall of 2001. While attending Drury, she worked part-time as a sales clerk at Dillard's, and at the front desk and verification department of Drury's financial aid office. According to Adrienne, she left the convenience store job to attend Drury, and she quit her other employment because of her schoolwork.

At trial time, she was living with three other students in an apartment furnished by Drury. The four women shared the chores, such as vacuuming, washing dishes, laundry, cooking and grocery shopping.

---

1. This is an error, as the trial court's written direction to Mother's then-attorney was to prepare a judgment which included requiring Father to pay one-half of Adrienne's uninsured medical expenses from and after April 28, 2000.

She often walked three blocks to classes because it was good therapy, but she had a driver's license and drove Mother's Jeep more often in the winter because she cannot walk as well in the winter.

Section 452.340.3 [2] provides that unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the support obligation of the parent terminates when the child reaches age eighteen, unless the provisions of subsection 4 or 5 apply.

■ Our Supreme Court held in *Fower v. Fower Estate*, 448 S.W.2d 585, 586 (Mo. 1970), that a father had a duty to support his adult mentally-incapacitated child; although, at that time, the duty of support was to the child and not the custodial parent. *See also Racherbaumer v. Racherbaumer*, 844 S.W.2d 502, 503–04 (Mo. App. E.D.1992). The duty to support a child continues after the child attains adulthood "if the child is unmarried, unemancipated, insolvent and, by reason of physical or mental conditions, incapable of supporting himself." *Cole v. Estate of Armstrong*, 707 S.W.2d 459, 462 (Mo.App. S.D.1986). The power of a divorce court at that time to provide for support ended when the child attained majority, at least when the child was not a party. *Id.*

In 1988, subsections 3 to 6 were added to § 452.340; of which subsection 4 authorizes the dissolution court to extend the parental support obligation past the child's eighteenth birthday. *Racherbaumer*, 844 S.W.2d at 504; *Heider v. Heider*, 822 S.W.2d 446, 447 (Mo.App. E.D.1991). Section 452.340.4 provides: "If the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried,[3] the court may extend the paren-

tal support obligation past the child's eighteenth birthday."

In *Speight v. Speight*, 933 S.W.2d 879, 882 (Mo.App. W.D.1996), the court stated:

Before the exception found in § 452.340.4 will apply, the court must find that the child is: 1) physically or mentally incapacitated from supporting himself; 2) insolvent; and 3) unmarried. The evidence needed to show these elements is substantial. *State ex rel. Albert v. Sauer*, 869 S.W.2d 853, 855 (Mo. App.1994). As to "mental incapacity," courts have been fairly strict in defining its parameters. "A parent's duty to continue supporting a physically or mentally incapacitated child arises from the child's helpless condition . . . [t]he child's mental incapacity must impair the child's ability to support himself." *Id.* Evidence introduced to establish incapacity and need might include medical testimony, letters of guardianship, living expenses and ability to meet obligations. *Id.*

In *In re Marriage of D.R.S. and P.W.S.*, 817 S.W.2d 615, 618 (Mo.App. S.D.1991), Letters of Guardianship for Incapacitated Person had been issued by the probate division of the circuit court for an adult child, and, in affirming the order of the trial court extending the support obligation for the adult child, this Court quoted the definition of "incapacitated person" from § 475.010(8) of the Probate Code, and found the letters of guardianship to be sufficient evidence that the child was incapacitated.

Although there was no evidence that letters of guardianship had been issued for Adrienne as an incapacitated person, nor was there any medical testimony, there is no checklist of evidence which must be

---

**2.** Statutory references are to RSMo 2000.

**3.** There is no contention that Adrienne had ever married.

introduced in order to establish incapacity. *Clark v. Clark,* 20 S.W.3d 562, 566 (Mo. App. W.D.2000).

The principal evidence on the issue of incapacity was the lay testimony of Mother as to Adrienne's injuries and her long and difficult progress toward recovery. The evidence reflects Adrienne's admirable determination and her remarkable achievements despite her injuries; but it also reflects that, despite the residual effect of her injuries, she is not physically or mentally incapacitated from supporting herself within the meaning of § 452.340.4.

■ "Insolvency" in the context of § 452.340.4 is defined as "the inability to pay debts as they become due in the ordinary course of business." *Racherbaumer,* 844 S.W.2d at 505; *D.R.S.,* 817 S.W.2d at 618.

Adrienne had accumulated from her numerous scholarships and a Pell grant a credit of $1,444.00 at Drury, and she testified that she was receiving social security disability benefits of an undisclosed amount, which has "helped a lot." Mother was holding some $28,000.00 in trust for her from the settlement of the accident claim, and she sent Adrienne money from Father's child support for medications that cost about one hundred dollars per month. Mother was saving the trust fund money for Adrienne if she went to graduate school as planned. Adrienne then had scholarships and the credit at Drury; she was the beneficiary of the trust fund; and there was no evidence of any debts. She was not insolvent within the meaning of § 452.340.4. As Adrienne was neither incapacitated nor insolvent, the trial court erroneously applied the law in ordering Father's child support obligation for her to extend beyond the age of majority upon the basis of its finding that she was disabled.

■ As it applies to Adrienne, § 452.340.5 provides, in pertinent part:

If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school ... and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, ... and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs.

Subsection 5 further provides:

To remain eligible for such continued parental support, at the beginning of each semester the child shall submit to each parent a transcript or similar official document provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and an official document from the institution listing the courses which the child is enrolled in for the upcoming term and the number of credits for each such course.

At the time of trial, Adrienne had completed at least twelve credit hours each semester with a grade point average of 3.2. She had also taken classes at another college in order to graduate in four years, and she expected to graduate from Drury in May of 2005. She timely enrolled at Drury, and she had completed the credit hours and achieved the grades required to continue the support obligation until the earlier of completing her education or becoming twenty-two years of age. Although Father denied receiving any of her college records, the testimony of Adrienne and Mother that they had

furnished the records to him show that Adrienne complied with the requirement that she furnish documentation of her scholastic progress to Father. At the time of trial, Father had an obligation to pay support for Adrienne until she reached the age of twenty-two, if she continued to comply with the higher education requirements of § 452.340.5.

■ In his second point, Father argues that the trial court erred in ordering him to pay one-half of Adrienne's uninsured medical expenses. He claims that the trial court misapplied the law because it did not require the trust fund to be used to pay the uninsured medical expenses. Mother had health insurance through her employment as a public school teacher, which paid much of Adrienne's medical expenses. Father claimed to have had health insurance for Adrienne at the time of the accident, but neither he nor anyone for him has paid any of the medical expenses. The trial court ordered Father to pay to Mother one-half of the uninsured expenses incurred after the motion to modify was filed and entered judgment against him in the amount of $10,010.92.

Section 452.340.1 authorizes retroactive child support, and it is completely within the discretion of the trial court to determine the effective date so long as it is subsequent to the filing of the motion. *Erickson v. Blackburn,* 169 S.W.3d 69, 79 (Mo.App. S.D.2005); *Malawey v. Malawey,* 137 S.W.3d 518, 525–26 (Mo.App. E.D. 2004); *Lokeman v. Flattery,* 146 S.W.3d 422, 430 (Mo.App. W.D.2004).

From the sparse evidence as to the creation and terms of the trust fund, it appears that the driver of the automobile (who died before the trial) had liability insurance of only $25,000.00, and Adrienne's personal injury claim was settled for that amount. The money was placed in a trust fund for her benefit, and Mother held some $28,000.00 as trustee at the time of trial. Adrienne hoped to attend graduate school, and Mother planned to pay her expenses for graduate school from the trust fund. If Adrienne did not attend graduate school, Mother planned to pay from the fund Adrienne's medical expenses, including substantial future expenses.

Mother necessarily had obligated herself to pay all of the uninsured medical expenses for Adrienne incurred after the filing of the motion to modify, and she was not required to use Adrienne's separate trust fund to relieve Father from his duty after April 28, 2000, to pay one-half of her uninsured medical expenses.

Father also complains that the trial court allowed the child support to be used for the accumulation of capital rather than as a means of paying child support. There is no evidence that Mother was accumulating capital from the child support payments by Father. The parents did not contribute more than a nominal amount to the trust fund; the money was partial compensation to Adrienne for her injuries. Father is not entitled to benefit from the increase in the amount of Adrienne's trust fund. He is entitled to no relief on his second point, and it is denied.

Father contends in his third point that the trial court erred in ordering him to pay the presumed child support amount shown on Mother's Form 14, because there was no substantial evidence that he had deliberately sought to limit his income in order to avoid paying child support.

Father submitted a Form 14 stating his income as $1,083.00 per month, and Mother's income as $2,893.00 per month, which resulted in a presumed child support amount of $265.00 per month for two children. The trial court rejected his Form 14. Mother's Form 14 stated Father's

monthly income as $2,878.00, and her monthly income as $2,560.00, resulting in a presumed child support amount for two children of $635.00 per month. The court accepted Mother's Form 14 and found that this presumed child support amount was not rebutted as being unjust or inappropriate. As previously stated, the court ordered Father to pay $635.00 per month to Mother from the filing of the motion to modify.

■ In calculating child support amounts, trial courts have discretion to impute income to an underemployed or unemployed parent, and a parent may not escape responsibility to his or her family by deliberately limiting his or her work to reduce income. *Hern v. Hern,* 173 S.W.3d 653, 655 (Mo.App. E.D.2005); *In re Marriage of Johanson,* 169 S.W.3d 897, 899 (Mo.App. S.D.2005). In order to avoid such a situation, a court may, in proper circumstances, impute income to a parent according to what that parent could earn by use of his or her best efforts to gain employment suitable to that parent's capabilities. *Hern,* 173 S.W.3d at 655.

■ The trial court imputed income to Father based upon his previous earnings, and it applied the two-step procedure set forth in *Woolridge v. Woolridge,* 915 S.W.2d 372, 379–80 (Mo.App. W.D.1996), in determining the presumed child support amount. Review of the application of the *Woolridge* procedure is to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law under the *Murphy v. Carron* standard. We review for an abuse of discretion with respect to the trial court's rebuttal review of the presumed child support amount. *Windsor,* 166 S.W.3d at 634.

Imputing income to Father in determining the child support amount was supported by substantial evidence, and was not against the weight of the evidence; neither did the application of the *Woolridge* procedure erroneously declare or apply the law. The trial court did not abuse its discretion in its rebuttal review of the presumed child support amount, and Father is not entitled to relief on this point. Point three is denied.

■ In his fourth point, Father reiterates his challenge to the order that he pay child support for Adrienne after her twenty-second birthday, and he also contends that the trial court erred in failing to order Mother to reimburse him for the child support he paid for Adrienne and Abbey after their emancipation.

The provision that § 452.340.3 terminates a child support obligation when the child reaches the age of eighteen has an exception which is applicable to the support of Abbey. As to Abbey, § 452.340.5 provides, in pertinent part:

> If when a child reaches age eighteen, the child is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue, if the child continues to attend and progresses toward completion of said program, until the child completes such program or reaches age twenty-one, whichever first occurs.

Abbey was eighteen and attending high school when the case was tried. Father states in his brief that Abbey graduated from high school on May 31, 2004, which shows that she continued after the trial to attend and progress toward completion of her secondary school education. This supports the trial court's finding that Father had a continuing obligation to pay support for Abbey as she then was not emancipated. The trial court did not err in ordering him to pay child support for Abbey under

§ 452.340.5, and Father is not entitled to relief on this point. Point four is denied.

■ Father claims in his brief that he is entitled to reimbursement under § 452.370.4, for child support paid by him after the emancipation of the children. This section requires the person entitled to receive child support to notify the parent obligated to pay child support of the emancipation of a child; and if notice is not given, then the receiving parent is liable to the paying parent for the child support paid following emancipation, plus interest.

■ The claim for reimbursement was not properly raised or preserved in the trial court, and it may not be reviewed upon appeal in the absence of plain error. *In re Marriage of Demorrow*, 169 S.W.3d 591, 593 (Mo.App. S.D.2005); *Mason v. Mason*, 873 S.W.2d 631, 636 (Mo.App. E.D. 1994). There is no error because neither child was emancipated when the case was tried, and there is no evidence that Father had overpaid child support for either child. If the claim were to be reviewed, it would be denied.

■ As his final point, Father complains of the order that he pay $2,000.00 of Mother's attorney fees. As a general rule, parties to a dissolution pay their own attorney fees. *Hern*, 173 S.W.3d at 656. However, § 452.355.1 authorizes an award of attorney fees for the cost to the other party of maintaining or defending any proceeding pursuant to §§ 452.300 to 452.415, which includes motions to modify child support under § 452.370. *Lueckenotte*, 34 S.W.3d at 399. Section 452.355.1 authorizes the trial court to order a party to pay reasonable attorney fees after considering all relevant factors, including the financial resources of the parties, the merits of the case, and the actions of the parties during the pendency of the action. *Erickson*, 169 S.W.3d at 80.

■ "The trial court is considered an expert on the necessity, reasonableness, and value of attorney's fees." *Travis v. Travis*, 174 S.W.3d 67, 71 (Mo.App. W.D. 2005). It is entirely within the trial court's discretion whether to award attorney fees, and an appellate court will interfere with an attorney fee award only on a showing of abuse of discretion. *Id.* To demonstrate an abuse of discretion, the complaining party must show that the trial court's decision was so against the logic of the circumstances, and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

Father testified that he had "good insurance" through his employer when Adrienne was injured that was secondary to Mother's insurance. However, his insurance paid none of Adrienne's medical expenses, and the trial court reasonably could have found that he made no genuine effort to apply for benefits under his policy. Father also testified that he would pay none of Adrienne's medical expenses unless the court ordered him to pay. Father's conduct in this respect, his cessation of his child support payments for Adrienne when she became twenty-one, and his meritless contention that the children had been emancipated, coupled with the necessity for Mother to retain an attorney to bring this action, and his ability to earn more than Mother, are sufficient to support the award of reasonable attorney fees to her. The trial court did not abuse its discretion in making the award, and it was not so against the logic of the circumstances, or so arbitrary and unreasonable as to shock the sense of justice. This point is denied.

The judgment of the trial court increasing the amount of child support, continuing the child support obligation until emancipation, and ordering Father to pay medical expenses and attorney fees is affirmed. The finding that Father's child support

obligation for Adrienne extends beyond the age of majority because she is disabled is reversed. As Adrienne has reached the age of twenty-two, and Abbey has completed high school, this case is remanded for further proceedings consistent with this opinion.

PARRISH, J., and RAHMEYER, J., concur.