Angela Shapiro McCOY, Appellant,

v.

Samuel SCAVUZZO, Respondent.

No. WD 68095.

Missouri Court of Appeals,
Western District.

March 25, 2008.

Michelle N. Higinbotham, Esq., Belton, MO, for Appellant.

Robert J. Young, Esq., Liberty, MO, for Respondent.

Before HOWARD, C.J., DANDURAND and AHUJA, JJ.

JOSEPH P. DANDURAND, Judge.

Angela Shapiro McCoy appeals the judgment of the Jackson County Circuit Court modifying child support. In her three points on appeal, she claims the trial court erred in: (1) dismissing for lack of jurisdiction her application for contempt; (2) denying her motion for removal of guardian ad litem; and (3) modifying the amount of child support. Ms. McCoy's first point is granted, the second and third points are denied, and the judgment is reversed and remanded in part and affirmed in part.

## Facts

Angela Shapiro McCoy and Samuel Scavuzzo are the parents of JMS, a son born

July 21, 1998. By virtue of court order, Ms. McCoy and Mr. Scavuzzo shared joint physical custody of JMS, and Mr. Scavuzzo was ordered to pay child support. In July 2003, Mr. Scavuzzo filed a motion to modify child custody and his child support obligation. In November 2003, Ms. McCoy filed an application for contempt requesting the court to enter an order requiring Mr. Scavuzzo to appear and show cause why he should not be held in contempt of court for failure to pay child support. The two actions were subsequently consolidated, and the court appointed a guardian ad litem for JMS.

A hearing was held on April 24, 2006. At that time, Mr. Scavuzzo dismissed the portion of his motion pertaining to child custody and parenting time, leaving only the portion pertaining to child support. Thus, the only issues tried related to those in dispute regarding child support.

The court entered its Judgment Modifying Child Support on January 10, 2007. The judgment dismissed for lack of jurisdiction Ms. McCoy's application for contempt, awarded the guardian ad litem his requested fees, and changed the child support paid by Mr. Scavuzzo from $616.00 per month to $494.00 per month.

Ms. McCoy's timely appeal followed.

## Standard of Review

The standard of review in a court tried case, including one pertaining to modification of child support, is set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Denney v. Winton,* 184 S.W.3d 110, 114 (Mo.App. S.D.2006). "The judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, or unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* (citations omitted). "A trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Id.* "We give deference to the trial court's determination of the credibility of the witnesses; and the evidence, with all of the inferences flowing therefrom, is viewed in the light most favorable to the judgment." *Id.*

## Point I

■ In her first point, Ms. McCoy claims the trial court erred in dismissing her application for contempt. The hearing on the show cause order was set for January 29, 2004. The trial court found that the show cause order lost viability after January 29, 2004, passed without court action. Ms. McCoy argues the trial court maintained jurisdiction over the contempt action because it was properly consolidated with Mr. Scavuzzo's motion to modify visitation. Ms. McCoy's point is granted.

The following timeline of events is helpful in analyzing this point:

- **July 11, 2003**—Mr. Scavuzzo filed a motion to modify child custody and support

- **November 19, 2003**—Ms. McCoy filed an application for contempt for Mr. Scavuzzo's failure to pay child support

- **November 20, 2003**—an Order to Show Cause was issued by Judge Bushur, directing Mr. Scavuzzo to appear on December 19, 2003

- **December 19, 2003**—the hearing on the order to show cause was continued to January 29, 2004

- **December 23, 2003**—the matter pertaining to modification of child custody and support, identified as subcase 01, and the matter pertaining to the order to show cause, identified as subcase 02, were consolidated by Judge Bushur. The consolidated cases were

scheduled for a case management conference on January 29, 2004.

- 2003/2004—the case was transferred to Judge Rigby
- **December 13, 2005**—the case was transferred to Judge Nixon
- **December 20, 2005**—an Order Setting Case Management Conference for January 3, 2006, was entered by Judge Nixon
- **January 3, 2006**—a Scheduling Order and Trial Setting was entered by Judge Nixon setting trial for April 24, 2006
- **January 12, 2007**—Judgment Modifying Child Support was entered by Judge Nixon

Both the show cause hearing and the case management conference for the consolidated cases were scheduled for January 29, 2004. The record does not reflect that the show cause hearing was held on that date. Neither does the record reflect that the show cause hearing was continued to a subsequent date. Moreover, the record fails to reflect that the case management conference scheduled for that date was held. A new order to show cause was not subsequently requested or entered by the court.

In its judgment, the trial court stated the following:

Where an order to show cause is issued by the court and served on the alleged contemnor, the validity of later proceedings depends on action by the court taken on the return date stated in the order. In this case, it is obvious that the court did not pronounce its judgment on January 29, 2004, nor is there any record of action taken to reset the case for hearing at a later date. The effect of the only court order to show cause served on appellant lost viability when the date set for the hearing passed without court action. *Simmons v. Meg-*

*erman,* 742 S.W.2d 202, 206 (Mo.App. W.D.1987); *Bandelier v. Bandelier,* 800 S.W.2d 1 (Mo.App. W.D.1990).

"In *Simmons v. Megerman,* 742 S.W.2d 202, 206 (Mo.App.1987), this court expressly held that where an order to show cause is issued by the court and served on the alleged contemnor, the validity of later proceedings depends on action by the court taken on the return date stated in the order." *Bandelier v. Bandelier,* 800 S.W.2d 1, 2 (Mo.App. W.D.1990). "Under *Simmons,* the effect of the only court order to show cause served on appellant lost viability when the date set for the hearing passed without court action." *Id.*

■ This rule is based on the principle of notice. "Persons charged with indirect contempt (contempt committed outside the presence of the court) are entitled to notice and reasonable time to defend against the contempt charge." *Burton v. Everett,* 845 S.W.2d 710, 713 (Mo.App. W.D.1993). "[P]unishment for contempt depends, in the first instance, upon an order by the court giving the alleged contemnor notice of the specific acts of contempt with which he is charged and a time when he must appear to make his defense." *Bandelier,* 800 S.W.2d at 2.

In *Bandelier v. Bandelier,* 800 S.W.2d 1, 2 (Mo.App. W.D.1990), notice was given by the opposing party's counsel. The court stated: "It is not a notice given by the opposing party's attorney which sets the cause in process, but action by the court." *Id.* The court also stated:

In a circumstance where the alleged contemnor fails to appear on the date set in the show cause order, and for whatever reason, the hearing is continued by the court to another date, advice to the contemnor of such occurrence would be sufficient, even if given by opposing counsel, and preserves the via-

bility of the original show cause order. That notice, however, must be based on action by the court continuing the case and not, as here, merely on the decision by the petitioner's attorney to revive the case by his own notice as a substitute for an order to show cause.

*Id.*

Both *Simmons* and *Bandelier* are distinguishable from the case *sub judice.* Ms. McCoy's contempt action was consolidated with Mr. Scavuzzo's modification action. This consolidation constitutes notice based on court action.

█ "The phrase consolidation of actions has been used by courts in three different senses." *Moss v. Home Depot USA, Inc.,* 988 S.W.2d 627, 630 (Mo.App. E.D.1999)(quotation marks and citation omitted).

> One application of the term means the staying of proceedings in one or more actions pending the outcome of proceedings in another action. Used in another sense, the phrase refers to the trial of several actions together. Actions which are consolidated in this sense ... remain separate actions with respect to docket entries, verdicts, judgments, and all aspects except trial. Finally, the term "consolidation" may mean the uniting of two or more previously distinct actions into one. Actions which have been consolidated in this sense lose their independent and separate existence, and only one judgment is rendered in the single action into which they have been combined.

*Id.*

Subcase 01 pertaining to modification of child custody and support and subcase 02 pertaining to the contempt action for failure to pay child support were consolidated for all purposes before the hearing on the show cause was scheduled to occur. The case management conference for the consolidated case was then scheduled for the same day as the show cause hearing. Unfortunately, the record is not clear as to what occurred on January 29, 2004. It does reflect that the consolidated case was transferred to two different judges over the course of two years.

Judge Nixon, the third judge assigned to the case, entered an Order Setting Case Management Conference for January 3, 2006; as a result of that conference, a further court order set the case for trial on April 24. Thus, regardless of what occurred in the intervening years, the consolidated case, comprised of both the application for contempt and the motion for modification, was set for specific court proceedings by virtue of court action, and Mr. Scavuzzo does not contend he lacked notice of those actions.

On January 3, 2006, Ms. McCoy filed a case management statement. In it, she stated she was seeking a judgment for back child support from Mr. Scavuzzo with interest and costs assessed against Mr. Scavuzzo. This is an explicit reference to the application for contempt, which comprised one part of the consolidated case.

The following exchanges occurred during the April 24, 2006, hearing:

> **Judge Nixon:** All right. This case is set for trial today. There's actually two cases that were consolidated. First is a motion to modify. That was filed on July 11th of 2003. Second is a motion for contempt. That was filed November 19th of 2003. Are the parties ready for trial?

> **Ms. McCoy's Counsel:** Almost, Your Honor.

> **Mr. Scavuzzo's Counsel:** Yes. Your Honor.

> . . . .

**Mr. Scavuzzo's Counsel:** And you understand that [Ms. McCoy] has a contempt action filed against you?

**Mr. Scavuzzo:** Yes, Sir.

. . . .

**Mr. Scavuzzo's Counsel:** You understand she's filed a motion for contempt; is that correct?

**Mr. Scavuzzo:** Yes.

**Mr. Scavuzzo's Counsel:** Or application—I'm sorry—for contempt, correct?

**Mr. Scavuzzo:** Yes.

**Mr. Scavuzzo's Counsel:** And you understand in this contempt what she's alleging you have failed to do?

**Mr. Scavuzzo:** Yes.

**Mr. Scavuzzo's Counsel:** Okay. And what would that be?

**Mr. Scavuzzo:** Not pay child support willfully.

**Mr. Scavuzzo's Counsel:** Okay. And in addition to that, has she alleged that you have failed to pay extracurricular activities?

**Mr. Scavuzzo:** Yes.

As these exchanges reflect, all parties were aware the scheduled trial pertained to the consolidated case comprised partly of Ms. McCoy's application for contempt. No party suggested that the application for contempt was no longer before the court.

On April 24, 2006, Judge Nixon issued an Order to Prepare Proposed Judgments. The Order stated: "On April 24, 2006 this matter came on for trial on a motion to modify child support and application for contempt." The January 10, 2007, Judgment noted that subcase 01 pertaining to modification of child custody and support and subcase 02 pertaining to the contempt action for failure to pay child support "have been consolidated for all purposes." It further stated that the court "took both consolidated matters under submission."

The record is clear. The application for contempt was consolidated with the motion to modify. All parties were aware that case before the court for trial on April 24, 2006, was a consolidated case comprised partly of an application for contempt. The law relied upon by the trial court in its judgment is inapplicable to this case. Notice via court action was given to all parties. Any concern for unfair surprise in unwarranted.

The point is granted,[1] and the portion of the judgment dismissing the application for contempt is reversed and remanded.[2]

## Point II

In her second point, Ms. McCoy claims the trial court erred in denying her

---

1. Ms. McCoy's brief cites and discusses *State ex rel. Keeling v. Randall*, 386 S.W.2d 67 (Mo. banc 1965), in support of her first point. This court's holding is not premised on *Keeling* as the court in *Keeling* limited its holding to the specific facts of that case. *See State ex rel. Moore v. Sharp*, 151 S.W.3d 104, 107–08 (Mo. App. S.D.2004)(noting the limited holding of *Keeling* and holding that a petitioner may voluntarily dismiss an action in a consolidated case).

2. Ms. McCoy urges this court to order that a finding of contempt be made against Mr. Scavuzzo. Though she does not cite it, presumably she is referring to **Rule 84.14**, which

allows this court to "give such judgment as the court ought to give." "An appropriate case for such judgment is one where there is no dispute as to the facts but only a dispute as to their legal significance." *LaRocca v. LaRocca*, 135 S.W.3d 522, 526 (Mo.App. E.D. 2004). This court "can render the judgment that the trial court should have rendered when the record and evidence give us confidence in the reasonableness, fairness, and accuracy of the conclusion reached." *Id.* This court declines to enter such judgment and, instead, remands to the trial court. *See Minor v. Minor*, 901 S.W.2d 163, 165 (Mo.App. E.D.1995).

motion for removal of guardian ad litem. She requests this court to remand to the trial court for an order removing the current guardian ad litem. Given that Mr. Scavuzzo dismissed the portion of his action pertaining to custody, a guardian as litem is no longer appointed in the case. Thus, Ms. McCoy's point is moot and, accordingly, is denied.

Section 452.423(1) and (2) state a guardian ad litem "may" be appointed in "all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue" and "shall" be appointed "in any proceeding in which child abuse or neglect is alleged." Ms. McCoy requested a guardian ad litem be appointed on March 22, 2004. She asserted a guardian ad litem was required pursuant to section 452.423 because of her allegations that Mr. Scavuzzo was neglecting or abusing JMS. She stated a concern for JMS's safety while in Mr. Scavuzzo's custody. The court appointed a guardian ad litem on April 2, 2004, citing the allegations regarding the safety of JMS. Thus, the guardian ad litem was appointed based on Mr. Scavuzzo's motion to modify custody and Ms. McCoy's concerns about JMS's safety.

Trial was scheduled on April 24, 2006. Mr. Scavuzzo's motion to modify custody and child support, the contempt action, and Ms. McCoy's motion to remove the guardian ad litem for misconduct were before the court. Mr. Scavuzzo immediately dismissed his claim for modification of custody. Thus, the action remaining before the court was for modification of child support. The court and all parties recognized that a guardian ad litem was no longer required as custody was no longer a contested issue. Upon dismissing the ac-

tion for modification of custody, the following occurred:

> Court: . . . The first one is we won't be needing [the guardian ad litem] any longer if there's no visitation and custody issues pending before the court. So, [guardian ad litem], you filed a motion for attorney's fees or guardian fees previously. I'm ready to hear some evidence on that so I can discharge you.

Ms. McCoy's counsel then questioned the guardian ad litem regarding his alleged misconduct. She stated it was for the purpose of contesting the requested guardian ad litem fees. In its judgment, the trial court modified child support, awarded guardian ad litem fees, and denied the motion to remove the guardian ad litem.

Ms. McCoy's argument on appeal is the guardian ad litem failed to faithfully execute his duties. She maintains it was error for the trial court to fail to remove the guardian ad litem. The sole relief she seeks from this court is an order removing the guardian ad litem.

The relief Ms. McCoy seeks is moot. When Mr. Scavuzzo dismissed the custody aspect of his motion, the need for a guardian ad litem ceased. All parties recognized this, as reflected in the transcript. The guardian ad litem was appointed for the custody dispute. The custody dispute never went before the court. The guardian ad litem did not render substantive testimony. Instead, his testimony was restricted to his fees. While Ms. McCoy's counsel's examination pertained to the guardian ad litem's conduct, it was for the purpose of challenging fees. This court cannot order the court to remove the guardian ad litem; his service terminated when the custody aspect of Mr. Scavuzzo's motion was dismissed.

The point is denied.[3]

3. In her reply brief, Ms. McCoy asserts that    her point pertains to the fees awarded to

## Point III

In her third point, Ms. McCoy claims the trial court erred in modifying Mr. Scavuzzo's child support obligation. She asserts the trial court erred in attributing $2,450 in monthly income to Mr. Scavuzzo instead of the $3,167 she advocated as an appropriate amount, arguing that the lesser amount is not supported by substantial evidence and is against the weight of the evidence. The amount of income attributed to Mr. Scavuzzo is the only error addressed in her brief.[4]

■■■■ Appellate courts "review maintenance and child support modification decisions under the same standard, affirming the trial court unless its judgment is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Pierce v. Pierce,* 215 S.W.3d 263, 265 (Mo. App. S.D.2007). Appellate courts "review the record and reasonable inferences in favor of the order, disregard contrary inferences, and defer to the trial court even if the evidence could support a different conclusion." *Id.* As neither Ms. McCoy nor Mr. Scavuzzo requested findings of fact, "all fact issues are deemed found in accordance with the judgment." *Id.* Appellate courts presume that "the trial court followed the law unless that presumption is refuted by the record." *Fulton v. Adams,* 924 S.W.2d 548, 554 (Mo.App. W.D.1996).

■■■■ "Past, present and anticipated earning capacity may be properly considered in determining the ability of a parent to pay child support." *Id.* "In calculating child support, the trial court has discretion to impute income to an underemployed parent." *Lokeman v. Flattery,* 146 S.W.3d 422, 427 (Mo.App. W.D.2004). "Under proper circumstances, the trial court may impute income to a parent based on what that parent could earn through his or her best efforts to gain employment proportionate to his or her capabilities." *Id.* "What constitutes proper circumstances

---

guardian ad litem and preventing the guardian from being appointed in future litigation between Ms. McCoy and Mr. Scavuzzo. She asserts, without citation to authority, that removal of the guardian ad litem for misconduct would result in a denial of guardian ad litem fees. *See Gruenert v. Green Park Nursing Home,* 241 S.W.3d 841, 843 (Mo.App. E.D.2007) (citation omitted)(" 'The failure to cite authority supporting [a] point or to explain the failure to do so preserves nothing for review.' "). Her initial brief fails to address these contentions. "Appellate courts are generally precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument." *Coyne v. Coyne,* 17 S.W.3d 904, 906 (Mo.App. E.D.2000). "Therefore, points and arguments omitted from an appellant's initial brief may not be supplied by a reply brief." *Id.* Moreover, "[a]rguments raised in the argument portion of the brief only and not included in the point relied on are not preserved for appeal." *Sexton v. Omaha Prop. & Cas. Ins. Co.,* 231 S.W.3d 844, 846 n. 2 (Mo.App. S.D.2007). Ms. McCoy's initial brief asserts only that the guardian ad litem should be removed for misconduct. Her contention is without merit.

4. Ms. McCoy's point also asserts that the trial court failed to state why her Form 14 was unjust and inappropriate, but she never articulates this as an error requiring this court's attention. "Arguments raised in the points relied on which are not supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review." *In re Marriage of Michel,* 142 S.W.3d 912, 919 n. 3 (Mo.App. S.D.2004).

In her reply brief, Ms. McCoy argues that the trial court erred in finding a substantial and continuing change given that it determined Mr. Scavuzzo's income had remained the same. She does not argue that a substantial and continuing change did not occur in her initial brief. Moreover, she fails to cite authority pertaining to the criteria for a substantial and continuing change. This argument is also not preserved. See *Coyne,* 17 S.W.3d at 906, and *Gruenert,* 241 S.W.3d at 843, discussed in the previous footnote.

depends upon the facts and must be determined on a case-by-case basis." *Id.*

In its judgment, the trial court found the following:

[Mr. Scavuzzo's] employer, since the original decree was entered, has changed on numerous occasions and has gone from employment in the grocery industry to management and installation of satellite receivers . . .

The court stated that Mr. Scavuzzo's documentary evidence, including his income tax return, and testimony "prove that he is capable of earning at least $2,450–per month in gross monthly income." The court further found that Mr. Scavuzzo earned $19,000 in five months. It concluded that his earning capacity was $2,450 at the time of the original judgment and "continues to be $2,450 per month."

Mr. Scavuzzo testified that his monthly income is $1,600. He further stated that his 2002 taxable income was $6,169, his 2003 taxable income was $7,628, and his 2004 income was approximately $17,000. He acknowledged he earned $19,000 in five months, but stated he had slow months and did not agree that the $19,000 could be annualized to suggest he would earn $38,000 a year. He also asserted that prior criminal activity hinders him in obtaining employment or business opportunities, as it is revealed when employers conduct background investigations. Moreover, he testified he has carpal tunnel, which hinders his ability to work. He also stated his income would likely decrease in the future because he anticipated leaving his current field of employment due to rising gasoline prices and an increase in the cost of drop insurance. Mr. Scavuzzo testified that he believed $200 to be a fair child support amount.

■ Thus, the evidence at trial supports a finding that Mr. Scavuzzo's income has greatly fluctuated, both increasing and decreasing. Given the standard of review set forth, *supra,* and the court's ability to impute income, the finding that Mr. Scavuzzo's income remained at $2,450 per month (or $29,400 per year) was not error. Ms. McCoy focuses upon Mr. Scavuzzo's testimony that he earned $19,000 in six months and that he manages his own company and two employees. The court explicitly acknowledged this testimony in its judgment. However, it was not required to conclude Mr. Scavuzzo was capable of consistently earning $19,000 every six months. This court does not determine what the trial court could have found; instead, it determines whether the trial court's actual finding is unsupported by substantial evidence or against the weight of the evidence. *See Pierce,* 215 S.W.3d at 265. It is not.

Ms. McCoy also asserts that it is "unreasonable" to believe that an individual's income would not increase over a five-year period of time. She cites no authority for this assertion, most likely because it is without merit. As demonstrated by Mr. Scavuzzo's testimony, incomes often fluctuate over time. The notion that an income would increase, decrease, or stay the same over the course of time is quite reasonable.

The point is denied.

## Conclusion

Ms. McCoy's application for contempt was properly consolidated with Mr. Scavuzzo's motion to modify, and the trial court retained jurisdiction over both actions. A request that the trial court be ordered to remove the guardian ad litem is moot. Finally, the trial court's determination of Mr. Scavuzzo's income was not error. The portion of the judgment finding a lack of jurisdiction over the application for contempt is reversed, and the application for contempt is remanded to the

trial court. The judgment is affirmed in all other respects.

All concur.